176 So. 213

**LONG et al. v. ROBERTS & SON.**

3 Div. 212.

Supreme Court of Alabama.

June 24, 1937. ·

Rehearing Denied Oct. 14, 1937.

A. A. Carmichael, Atty. Gen., B. W. Simmons, Asst. Atty. Gen., L. H. Ellis, of Columbiana, H. L. Anderton, of Birmingham, and E. C. Boswell, of Geneva, for appellants.

Bradley, Baldwin, All & White and Martin, Turner & McWhorter, all of Birmingham, and Rushton, Crenshaw, & Rushton, of Montgomery, for appellee.

Holley, Milner & Holley, of Wetumpka, amici curiae.

PER CURIAM.

This cause was originally assigned to Justice Gardner for preparation of an opinion, but upon consideration thereof in consultation the views expressed therein did not meet with the full approval of a majority of the court. The opinion prepared, however, states the case with citation of authorities, which are likewise reviewed in State Tax Commission v. Hopkins (Ala. Sup.) 176 So. 210,[1] this day decided, and these opinions considered together constitute a sufficient discussion of the questions presented and cases noted, without further elaboration here.

All of the members of the court concur in so much of the opinion of Justice Gardner as treats the matter of exemption of the county from any liability on account of the sales tax brought forward by the amendment to the bill, and, therefore, in the affirmance of the decree in that respect.

A majority of the court, consisting of Chief Justice Anderson, and Justices Thomas, Brown, and Knight repudiate in toto the reasoning of the Illinois court in the cases noted so far as applicable to our sales tax, and think that question sufficiently dealt with in State Tax Commission v. Hopkins, supra, and that the tax is applicable in all transactions named in complainant's original bill.

The decree in this respect is therefore reversed, and one here rendered denying complainant the relief it seeks in said original bill.

Justices Bouldin and Foster concur in the reversal of the decree in that respect, but would qualify their concurrence by limiting the sales tax to those matters which constitute merchandise as commonly understood in the commercial world, and as exempting such matters relating to service where the material furnished was but an incident thereto, as stated in Doby v. State Tax Commission (Ala.Sup.) 174 So. 233.[2] Justice Bouldin further states his views in a separate opinion hereto attached.

 The decree is therefore affirmed in so far as county exemption is concerned, as set out in the amendment to the bill, and reversed as to the application of the sales tax to complainant's business, as appears in the original bill, and in that respect a decree is here rendered denying complainant relief it seeks.

Affirmed in part, and in part reversed and rendered.

ANDERSON, C. J., and THOMAS, BOULDIN, BROWN, FOSTER, and KNIGHT, JJ., concur as herein indicated.

GARDNER, J., dissents in part.

GARDNER, Justice (dissenting in part).

The sales tax provided for in the Act of February 23, 1937, levies a tax "upon every person, firm or corporation engaged or continuing within this State in business of selling at retail any tangible personal property whatever, including merchandise and commodities of every kind and character."

Complainant operates a commercial printing, lithographing, engraving, and bookbinding establishment.

Illustrative of the character of business here insisted is without the influence of the act, is its commercial printing conducted substantially as follows: A customer brings to complainant's place of business what is known as "copy," and orders a certain number of printed forms, circulars, books, pamphlets, briefs, and the like printed from said copy, and to be delivered when so completed in accordance with the order. The order is filled by composing the copy into type form, either by hand setting or by the use of a typesetting machine; a careful comparison is then made, the type then locked into a chase, which, in turn, is locked on the press beds, the press put in motion and the forms produced; these forms, when the size of the job is such as to require it, are folded in sections, and in the case of pamphlets and

---

[1] Ante, p. 556.

[2] Ante, p. 150.

books are gathered and stitched, the books being bound.

While the cost of paper and materials, which enter the completed job, constitutes about 26 per cent. of the price charged or received, yet the paper loses its commercial value, and becomes of value only to the customer for whom the work is specially done; and if the customer refuses to accept the completed job, then the finished product would be of no value, except as waste paper or junk. The largest part of the value of the work done by complainant in its commercial printing is in service of a highly skilled and technical character.

The work of lithographing, copper plate engraving, and steel die embossing resembles in substance and effect, so far as any legal principle is involved, that of commercial printing, above outlined, and need not be here detailed.

Complainant also operates a bookbindery in which matter printed in its commercial printing plant is bound into books, and manufactures and sells to the counties of this state printed and lithographed matter and bound books of record, made under special orders as received from the several counties.

Complainant insists that the character of business herein briefly outlined is not within the influence of the Sales Tax Act, as it does not constitute a "selling at retail any tangible personal property," but is essentially a service for which no tax is imposed, and that, in any event, there was no legislative intent that the tax should be paid by a county which is but an arm of the state. The trial court sustained complainant's theory, and entered a decree accordingly, from which the tax commission has prosecuted this appeal.

The state of Illinois has a recent Sales Tax Act substantially as our own, so far as the pertinent question here involved is concerned, and the rulings of the Supreme Court of that state fully sustain the holding here. J. A. Burgess Co. v. Ames, 359 Ill. 427, 194 N.E. 565, 566; A. B. C. Electrotype Co. v. Ames, 364 Ill. 360, 4 N.E. (2d) 476; H. G. Adair Printing Co. v. Ames, 364 Ill. 342, 4 N.E.(2d) 481. The holding in the latter case, here much in point, is well summarized in the headnote as follows:

"Printers who received copy for printed matter, and who in process of carrying out their contract of service used ink for purpose of destroying plain paper so far as its commercial value was concerned, which paper was of no value to any person other than one for whom printing was done, held not engaged in business of 'selling tangible personal property at retail,' within Retailers' Occupation Tax Act (Smith-Hurd Ill. Stats. c. 120, § 440 et seq.)."

The opinion refers to Burgess v. Ames, supra, as controlling in principle, wherein, referring to blueprints, it was said: "The paper is destroyed when the exposure is made, and it has no further use or value to any one other than the person interested in that particular reproduction," and then proceeds: "The same is true of the work carried on by appellees. Copy for printed matter is delivered to them, and in the process of carrying out their contract of service they use ink for the purpose of destroying plain paper so far as its commercial value is concerned. From that time it is of no use or value to any person other than the one for whom the printing is done. It should be apparent that letterheads, circulars, mail-order catalogues, printed briefs for an attorney, or any other special printed matter, would be without commercial value, and it follows that the printer is engaged only in service. The appellees are not engaged in the business of selling tangible personal property but in the business of printing—one of the graphic arts."

The A. B. C. Electrotype Case, supra, is to like effect, the court concluding: "What the customer really pays for is the skill, labor, and use of the machinery and equipment of the electrotyper. The electrotyper is engaged in the business of furnishing that skill and labor and the use of that machinery—not in the sale of tangible personal property at retail."

That these decisions are here directly in point cannot be seriously questioned, and we do not read the brief of counsel for the tax commission to the contrary.

It is insisted, in the first place, however, these rulings are not sound, and should not be followed, and, in the second place, that they are opposed by People of New York ex rel. Walker Engraving Corporation v. Graves (New York Supreme court, App.Div., 3rd Department) 243 App.Div. 652, 276 N.Y.S. 674, and People ex rel. Foremost Studio, Inc. v. Graves (New York Supreme Court, App.Div., 3rd Department) 246 App. Div. 130, 284

N.Y.S. 906. We have read these cases with interest, but we are not prepared to say that any real conflict exists between them and those from the Illinois court. Whether the completed product furnished the customer was of value to the public generally is not made to appear. Indeed it would seem more clearly to appear from the opinion in the Foremost Studio Case, supra, that the product did have a commercial value to the public, aside from its value to the customer. Other differentiating features may be noted, but further comparison is unnecessary.

And as to our own statute, we may also note the distinction that in the New York statute (Tax Law [Consol.Laws, c. 60] § 391) is the provision that "it shall be presumed that all receipts are subject to the tax until the contrary is established," while as to our own the holding of this court, in Doby v. State Tax Commission, supra, is to the effect that the rule of strict construction prevails, and "no strained construction is to be indulged against the taxpayer because of a purpose to raise needed revenue." Considered upon the basis of sound reasoning, we are persuaded the Illinois cases, supra, are correct.

In the operation of the business in the manner herein outlined, complainant is in reality engaged in rendering a service. True the paper and material originally had a value, which constitutes a percentage of the cost of the completed job. But the value is destroyed to all practical purposes when used in filling the order—that is, destroyed so far as the general public is concerned. The paper in the lawyer's brief was of some commercial value, but the printed brief destroys its value as paper, and renders the completed job serviceable only to the lawyer. In such instance, the material used is but an incident to the service rendered, just as was the case of the painted automobile in the Doby Case, supra.

True, as counsel argue, in the Doby Case the automobile was that of the customer, but the principle is the same, that is, that the material is a mere incident to the service, and inseparable therefrom, distinguished doubtless in this respect from Western Leather & Finding Co. v. State Tax Commission, 87 Utah, 227, 48 P.(2d) 526.

Where, as here, the material is a mere incident to the service, and its commercial value destroyed in its use and completion of the job and inseparable therefrom, the principle of the Illinois cases controls. As illustrated by the language of the Illinois court in the Burgess Case, supra, wherein it was said: "We can perceive no logical difference between the paper upon which a photostatic copy of something is made or a blueprint produced, and that paper which a lawyer uses for writing a will or deed, a doctor for writing a prescription, or an abstractor for showing a chain of title. The paper is a mere incident; the skilled service is that which is required."

The tax commission insists that the theory of the Illinois court would lead to the exemption of custom built automobiles or a tailor-made suit of clothes, but the characteristic distinguishing such cases from that here considered is that in the former the automobile and the suit of clothes represent tangible personal property of value to the public generally, while here the commercial value is destroyed.

Much argument is indulged to the effect that complainant's business is within the definition of manufacturer. If for the purpose in hand that be conceded, yet, as argued by counsel for complainant, so would a miller who grinds corn into meal be so classified, yet such classification alone would not make of him a seller of meal at retail. Whatever, therefore, may be said as to this insistence, we do not deem it a matter of controlling importance.

The pivotal question is whether or not complainant is engaged in selling at retail tangible personal property within the meaning of the act. We answer in the negative upon the authority and reasoning of the Illinois cases herein discussed, and are, therefore, in accord with the chancellor's ruling. It is, of course, not questioned, that as to those articles of merchandise, made up by complainant, which are of value to the public generally, as ruled pads or blank books which it keeps in stock ready for sale at any time, such a sale is of tangible personal property and subject to the tax. But this feature of complainant's business is not here involved, and needs no further mention.

And we reach a like result as to the county's liability. It is the generally accepted rule that when a tax levy is laid in general terms with nothing to indicate

that it was intended to apply to a city or county, it will be held not to so apply. State v. City of Montgomery, 228 Ala. 93, 151 So. 856; City of Birmingham v. State ex rel. Carmichael, 233 Ala. 138, 170 So. 64.

Counsel for the tax commission recognizes this general rule, and given application it is clear counties would be exempt if the act is silent in reference thereto. But it is argued the rule is here inapplicable, as the tax is upon the retailer and not the consumer, and that of consequence the counties in making purchases are not taxed. Though we appreciate the ingenious argument, yet we are of the opinion it calls for a too restricted view of the act, and leaves out of consideration the basic principle of the rule and the clear legislative intent.

The rule of exemption is court made, rested upon the assumption there was no legislative intent to levy a tax to pay a tax. Illustrated by the present case, the county (an arm of the state—Montgomery, Superintendent of Banks, v. City of Athens, 229 Ala. 149, 155 So. 551; Montgomery, Sup't of Banks, v. State, 228 Ala. 296, 153 So. 394) receives a portion of these revenues and if required to pay the tax, is but paying what in part it is entitled to regain.

True, in the strict and proper sense the tax is on the seller, and he is properly in such a sense to be denoted as the taxpayer. Doby's Case, supra.

But we are dealing with a broad principle relating to governmental functions, and should look through form to substance. And when this is done, the act clearly demonstrates that the burden of the tax is expressly placed upon the consumer, and it is this burden with which the broad principle of exemption has to deal.

The verb "tax" means take for governmental expenses, or exact tribute or contribution from for governmental expense. 4 Words and Phrases, Second Series, page 846. To "tax" also means "to lay a burden upon." Webster's International Dictionary.

True, in the Doby Case, supra, it was expressly stated the seller is the taxpayer, for he it is who is required to take out the license, make the return, keep the records, and pay the tax to the state tax commission. But in the same opinion section 24 of the act is quoted, in which it is declared unlawful for the seller to fail or refuse to add to the sales price and collect from the purchaser the amount due on account of the tax, or in any manner to absorb the tax, and added the conclusion that "the ultimate burden of the tax is thus passed on to the customer." Further consideration of this question is therefore unnecessary.

While theoretically the tax is on the seller, yet in actuality the burden of the tax falls on the consumer. Like conclusion was reached by the Kentucky court on a similar provision in City of Covington v. State Tax Commission, 257 Ky. 84, 77 S.W.(2d) 386.

To "tax," as above indicated, is to take for governmental expenses or exact tribute or contribution from for governmental expense, and it is this burden of taxation, this exaction of tribute to which the general principle of exemption as to governmental function has application.

In Van Brocklin v. Anderson, 117 U.S. 151, 6 S.Ct. 670, 682, 29 L.Ed. 845, the principle is expressed in these words: "General tax acts of a state are never, without the clearest words, held to include its own property, or that of its municipal corporations, although not in terms exempted from taxation. * * * 'The immunity of the property of the state, and of its political subdivisions, from taxation, does not result from a want of power in the legislature to subject such property to taxation. The state may, if it sees fit, subject its property, and the property owned by its municipal divisions, to taxation, in common with other property within its territory. But inasmuch as taxation of public property would necessarily involve other taxation for the payment of the taxes so laid, and thus the public would be taxing itself in order to raise money to pay over to itself, the inference of law is that the general language of statutes prescribing the property which shall be taxable is not applicable to the property of the state or its municipalities. Such property is therefore, by implication, excluded from the operation of laws imposing taxation, unless there is a clear expression of intent to include it.' [Trustees for Support of Public Schools v. City of Trenton], 30 N.J.Eq. [3 Stew. 667], 681."

The Connecticut court expressed the principle in these words: "Money in the keeping of a municipality as the result of the exercise of its power of taxation, for

one public use, is not to be made to pay tribute to another public use." Town of West Hartford v. Board of Water Com'rs, 44 Conn. 360.

Under the act here in question, the consumer pays the tax to the seller; tokens are distributed for that very purpose, and as the more convenient means of meeting its payment. While strictly speaking, and from a technical standpoint, it is a tax on the seller, yet in practice and under the express language of the act, the consumer must pay the sum—he it is who is to make the tribute. To hold, therefore, that the general principle of exemption is inapplicable to governmental functions because technically the seller is due to collect and pay the tax to the tax commission, is to sacrifice substance to form, when, as here, the county, out of its treasury, must actually pay the amount of the tax in addition to the selling price.

The case of Orange State Oil Co. v. Amos, 100 Fla. 884, 130 So. 707, dealt with no such statute, and is, therefore, without application here.

We conclude therefore that the general principle of exemption is applicable, and that the counties of the state are not subject to pay the tax, there being nothing in the act clearly so to indicate.

But it is argued that the act (section 2[f]) expressly exempts incorporated cities and towns and the state from its operation, and the maxim "Expressio unius est exclusio alterius"—the expression of one thing in the exclusion of the other—is pressed upon our attention to the end that the act may be construed to include counties as they are not so designated. The authorities all agree that this maxim (a rule of construction, and not of substantive law—United States v. Barnes, 222 U.S. 513, 32 S.Ct. 117, 56 L.Ed. 291) is to be employed advisedly, and not be given universal application, that is, it should be applied only as a means of discovering legislative intent, and should never be permitted to defeat the plainly indicated purpose of the Legislature. 59 Corpus Juris 984.

The opinion in the recent case of Ramsay Motor Co. v. Wilson, 47 Wyo. 54, 30 P.(2d) 482, 483, 91 A. L. R. 908, notes some interesting extracts from the authorities illustrative of what is said above. Among them Colquhoun v. Brooks, 19 Q. B. D. 400-406, where it was observed that the maxim has frequently been misapplied, and that "the failure to make the 'expressio' complete very often arises from accident." And on review of this case (21 Q. B. D. 52-65) in the Court of Appeals, expressly agreeing with the court below, it was said: "The exclusio is often the result of inadvertence or accident, and the maxim ought not to be applied, when its application, having regard to the subject-matter to which it is to be applied, leads to inconsistency or injustice."

Like thought was expressed by the Massachusetts court (Simmons v. Suffolk County, 230 Mass. 236, 119 N.E. 751), wherein was the observation that this maxim is "not conclusive of legislative intent, but is to be considered with regard to the object sought to be obtained by the entire legislation of which the subject-matter to which it relates is but a part." And in Shurtleff v. United States, 189 U. S. 311, 23 S.Ct. 535, 47 L.Ed. 828, the maxim was held inapplicable in view of the fact that the right of removal existed though the statute had been entirely silent on the question.

So, in the instant case, we think the exemption of the county, the state, cities, and towns, would have existed without any expression on the matter in the act— the exemption rests upon principle and not upon statute.

True, the draftsman of the act has designated the state and incorporated towns and cities as exempt when the purchase is for lawful municipal or state purposes. For such purposes, the exemption would have obtained in any event. The federal government in purchases for such lawful purposes is clearly exempt (Graves v. Texas Co., 298 U.S. 393, 56 S.Ct. 818, 80 L.Ed. 1236), though omitted in the designation of the statute, as above indicated. The purpose was clear enough to give expression to exemption to those governmental agencies akin to those named. No reason suggests itself, and none is here advanced for discrimination in this respect against a county in favor of cities and towns. We think it clear enough that the omission was by mere inadvertence or accident, and the legislative intent plainly appears.

We conclude, therefore, that the maxim insisted upon is here without application, and that the statute is to be properly interpreted as likewise extending the exemption to counties.

It results, therefore, that in this respect the ruling of the court below should be affirmed.

Upon the question of denial of relief to complainant on the original bill, I respectfully dissent, and adhere to the view first herein above expressed.

BOULDIN, Justice (concurring).

I do not understand the decision of the majority to depart from the holding in the Doby Case, supra, to the effect that if the transaction is essentially one for service, the fact that some materials are used as an incident to such service, and consumed in the using, does not render it a sale of tangible property within the act. But, where the aim and end of the transaction is the passing of a tangible article from one to the other for the latter's use or consumption, the fact that service or materials, or both, have been put into the article, or that it is useful only to the party who receives it, does not remove such business from the scope of the act.

Indeed, section 2 of the act levies the tax on "gross proceeds of sale," and section 1 defines "gross proceeds of sales" as the "value * * * accruing from the sale * * * without any deduction on account of the cost of the property sold, the cost of the materials used, labor or service cost." Manufacturers selling direct to customers are further recognized as subject to the act in section 1 and section 4(k).

FOSTER, J., concurs.