176 So. 210

STATE TAX COMMISSION v. HOPKINS.

3 Div. 219.

Supreme Court of Alabama.

June 24, 1937.

Rehearing Denied Oct. 14, 1937.

A. A. Carmichael, Atty. Gen., B. W. Simmons, Asst. Atty. Gen., H. L. Anderton, of Birmingham, E. C. Boswell, of Geneva, and L. H. Ellis, of Columbiana, for appellant.

[1] Ante, p. 404.

Mooneyham & Mooneyham, Hill, Hill, Whiting & Rives, and Thomas & Thomas, all of Montgomery, for appellee.

THOMAS, Justice.

The prayer was for a declaratory judgment. The decree was that optometrists were not liable for 2 per cent. excise tax on the finished product, and that no itemization of labor and material is required under the provisions of the Act of February 23, 1937 (Gen.Acts 1936–37, Ex.Sess. p. 125).

The questions propounded and answered in the decree are, Is the purpose of the act to tax the original or the finished product; and is it necessary to separate the different items for the purpose of taxation?

The court said:

"The Act was not passed for the purpose of taxing labor or service, and to this statement all parties concerned agree. Should the Court hold that the finished product should be taxed, with all fees incident thereto included, the optometrist could avoid this ruling by first examining the eyes of the patient and then selling him the rims and lenses in the rough, and thereafter preparing said rims and lenses for the eyes of his patient.

"The next question that presents itself is whether the rims and lenses are incident to the service, or not? And whether the price of the material, as compared with the professional labor and skill, is consequential or inconsequential?

"The Supreme Court of the State of Illinois, in the case of J. A. Burgess & Co. v. Ames, 359 Ill. 427, 194 N.E. 565; H. G. Adair Printing Co. v. Ames, 364 Ill. 342, 4 N.E.(2d) 481, and the A. B. C. Electrotype Co. v. Ames, 364 Ill. 360, 4 N.E.(2d) 476, arrived at the conclusion that the material was incident to the service, and inconsequential as compared to the whole. The Supreme Court of the State of Alabama, in a similar case, recently followed the Illinois court in Doby et al. v. State Tax Commission, 174 So. 233,[1] decided May 6, 1937." The terms of the Act were recently considered, upheld, and defined in Frazier v. Tax Commission (Ala.Sup.) 175 So. 402,[2] Holt v. Long, as President, Tax Commission, ante,

[1] Ante, p. 150.　　　[2] Ante, p. 353.

p. 369, 174 So. 759, and Doby et al., v. Tax Commission, ante, p. 150, 174 So. 233, 236.

We do not understand that the Doby Case is decisive of the question here presented under the agreed statement of facts. It was there prudently observed that (1) no strained construction is indulged against the taxpaper because of a purpose to raise revenue; (2) that persons exercising the privilege of doing business within the spirit of the statute are not to be held exempt, save as defined in the statute; (3) that the act is to be so construed that such portion of the business as reasonably represents sales of tangible articles to the customer be subject to the tax, to the end that all persons engaged in the business upon which the tax is levied bear their just share of the burden and contribute to the revenue to be raised. This holding is made clear by the observation that the case of Western Leather & Finding Co. v. State Tax Commission of Utah, 87 Utah, 227, 48 P.(2d) 526, 528, "contains a well-reasoned discussion of the principles involved and their application to cases of this class."

The Utah case and that of Lone Star Cement Co. et al., v. State Tax Commission et al. (Ala.Sup.) 175 So. 399,[3] held the statute imposed an "ultimate consumer's tax" based upon the amount of gross receipts of retailer to consumer. This is in accord with reason and the controlling intent of the legislative mind.

The holding in the Doby Case was (1) if in fact parts and equipment "passed substantially intact to the customer, the reasonable sale price therefore would not be exempt because such parts or accessories were installed in place in the repaired car for the use of the customer"; (2) that the proprietor "is not liable for this tax upon the price or value of material and supplies * * * consumed in the rendition of service to the customer. Furnished as an incident to the service, this may be justly treated as a part of the service"; and (3) that the secondhand car sale portion of that case was considered as follows: That there were exempt from the provisions of this act "* * * (f) Amounts received from the sale of used automotive vehicles, which vehicles are commonly known to the trade as secondhand automotive vehicles." The exemption included secondhand cars and "this statute exempts the proceeds of such sale as a whole."

Thus we may note that this last-cited case by this court was not decisive of the instant case under the agreed statement of facts, for the reasons now to be stated at some length.

The Doby Case involved the operation of a repair store for automotive vehicles and not the place of manufacture of such vehicles. Hence, different principles are to be applied, as we will indicate. In Western Leather & Finding Co. v. State Tax Commission, 87 Utah, 227, 48 P.(2d) 526, a like question to that for decision was presented. In that case the appellant was engaged in a leather and finding business for the sale of old or used shoes. It paid the tax on sales to shoe shiners and boot cleaners on the theory that (1) such material was consumed by the purchaser, but (2) the materials, as leather and findings sold to shoe repairer were not sold to the consumer, and that when affixed by the latter to the shoes, the ultimate purchaser was the consumer to be taxed. The tax commission of Utah had ruled that the leather company was liable for material sold to shoe shiners and cleaners, and also for materials sold to the repairer. It was shown in that case that it was not the custom of such repairers to make a charge for materials separately and apart from the charge for labor, but that the material in such a business of repairing was about 30 per cent. and the labor 70 per cent. of the total charge. It was held that the owner of the shop was not the consumer, that the placing of the leather on shoes was the sale of tangible personal property under the Utah act (Laws Utah 1933, 2d Sp.Sess., c. 20, p. 36, § 2(e) within its definition of a retailer. It was that a retailer was "a person doing a regularly organized retail business in tangible personal property, known to the trade and public as such and selling only to the user or consumer and not for resale. 'Retail sale' includes all sales made within the state of tangible personal property except wholesale sales." The definition of such terms in the Alabama statute is as follows: "* * * (1) The term 'sale at retail' or 'retail sale' shall mean all sales of tangible personal property except these above defined as wholesale sales. The quantities of goods sold or prices at which sold are immaterial in determining whether or not a sale is at retail, except as herein expressly provided. * * * Sales of tangible personal property or products to manufac-

---

turers; quarry, mine operators or compounders, which are consumed by them in manufacturing, mining, quarrying or compounding and do not become an ingredient or component part of the tangible personal property manufactured or compounded are retail sales." (Alabama Luxury Tax Act, Section 1).

The holding in the Utah case is that the owner of the repaired shoes was the consumer and the placing of the leather on the shoes was a sale of tangible personal property under the Utah statute. That is, the consumer of the leather is the person who wears the shoes so repaired. That opinion among other things states as follows:

"If the charge made for repairing shoes constitutes a sale by the shoe repairer to the owner of the shoes of the materials used in the repair jobs, then and in such case under the express provisions of the act the plaintiff is not liable for the payment of the tax here sought to be imposed upon it. The word 'consume' is thus defined in Webster's New International Dictionary, Second Edition:

" '1. To destroy the substance of, esp. by fire;—formerly and still figuratively used of any destructive or wasting process, as evaporation, decomposition, and disease. 2. To spend wastefully; hence, to use up, expend; waste. 3. To use up (time) whether wastefully or usefully; as, hours consumed in reading. 4. To eat or drink up (food); devour. 5. To waste or burn away; to perish. Syn.—Absorb, spend, squander, dissipate.'

"A person who places soles, heels, and patches on old worn shoes does not consume material so used within the definitions above quoted or within the meaning of the statute. The consumer is the person who wears the shoes after they are repaired. If there were any doubt about the legislative intention as to whose duty it is to pay the sales tax, such doubt is removed by the provisions of subsection (f) of section 2 of the act above quoted. Under the provisions of such subsection it is clear that a sale of leather or other material to be used in the manufacture of new shoes is not subject to the tax. The mere fact that the leather and other materials here in question were used to make only a part of a shoe does not change the nature of the transaction. A 'sale of goods' is defined as 'an agreement whereby the seller transfers the property in goods to the buyer for

a consideration called the price.' R.S. Utah 1933, 81-1-1. A sale is in effect so defined in the act here involved. When a shoe repairer delivers the repaired shoes to the owner thereof and receives the payment therefor, the title to the materials used in the repair job passes to the owner. The amount paid includes the price of the materials used. Such a transaction possesses all of the elements of a sale of the materials used in the repair job."

We advert to the cases cited in the opinion by the trial court. In J. A. Burgess v. Ames, 359 Ill. 427, 194 N.E. 565, the appellant was in the business of making upon sensitive paper positive prints from tracings or drawings furnished by the customer. This was done upon a paper especially prepared by the Burgess Company, and such paper was useless for other purposes when exposed to the action of light. It was insisted by the state authorities that such paper so used in the making of blueprints or photostats was the sale of tangible personal property. The respondent urged that such activities embraced the term of service, which was not taxable. The court had the view that the sensitized paper was destroyed and not of other value, and that the transaction was that of service and was not subject to the sale tax. In this decision the Illinois court apparently overlooked the fact that the Burgess Company was engaged in the manufacture of such tracings or prints.

In the case of People of New York ex rel. Walker Engraving Co. v. Graves, 243 App.Div. 652, 276 N.Y.S. 674, the holding was that a manufacturer of photo engraving, delivering a finished product to customers as a piece of copper or zinc plate with an etching thereon, was not entitled to a refund of the retail tax value, on the ground that the payment to the manufacturer was for service and not for the metal delivered, the value of which metal was not more than 2 per cent. of what the customer paid. This case is contrary to the Illinois view we have just indicated above.

The case of A. B. C. Electrotype Co. v. Ames, Director of Finance, 364 Ill. 360, 4 N.E. (2d) 476, discloses that the company was the maker of electrotypes, stereotypes, and materials for the use of customers. This was done by a process similar to that employed in the Burgess Case, supra, and in the manufacturing process the material so used represented from 5 to 12 per cent. of the sum paid by the customer for the

finished product so manufactured and delivered.

The Burgess and the Electrotype Cases are similar and are like decisions.

The Adair Printing Case [H. G. Adair Printing Co. v. Ames, 364 Ill. 342, 4 N.E. (2d) 481] involved the manufacturing process of commercial printing, such as letterheads, circulars, catalogues, and other special printed matter. In this case it was held that such manufacturer was only engaged in personal service and that such printing activities did not amount to the selling of tangible personal property within the rule as to taxing privileges or franchises.

The three cases were by Mr. Justice Shaw, declaring the rule as to the tax imposed by the act. We are not impressed that the rule of these Illinois cases is to be applied to the facts before us.

In the agreed statement of facts, it is shown that the value of the material employed in the manufacture of glasses for and fitting the same to the customer is 20 per cent. of the total price charged for the manufacture and service when the glasses are completed and delivered. The test as to the application and validity of the tax in such cases is not the relative value of the material and service, but the nature and character of the process, activities, or manufacture required or employed. That the matter is severable, as indicated by the agreed case, does not change the fact or process of manufacture and sale of a tangible personal property made the subject of appropriate provisions of the statute. Lone Star Cement Co. et al. v. State Tax Commission et al., supra.

The trial court referred to the recent decision in the case of Doby et al. v. Tax Commission, supra. We have indicated that Doby was engaged in the operation of an automobile repair shop and not in operation as a manufacturer, or one engaged in a manufacturing process. That is to say, parts purchased by the mechanic are taxable on the sale to him. It is further noted that the used cars, involved in the Doby Case were especially exempt from the Sales Tax Act, and that case merely holds that reconditioned cars, as a unit of sale, cannot be split up so as to make a separate sale of the various parts used in reconditioning an automobile. Therefore, the decision in the Doby Case, supra, is not in point here, and not of controlling effect.

It is apparent from what we have said that the act should not be extended so as to tax one's income from personal skill in the exercise of a profession. What we are dealing with is the manufacture and sale of glasses fitted to the eyes of the ultimate consumer, that is subject to the tax imposed by the appropriate provisions of the recent act, approved February 23, 1937.

It results that there was error in the judgment rendered by the trial court and that judgment is reversed.

Reversed and rendered.

All the Justices concur.

