BEATTY, Justice.
This is an appeal by plaintiffs, who are members of the Alabama Board of Optometry and who are practicing optometrists. We affirm.
The plaintiffs brought an action for a declaratory judgment in the Circuit Court of Montgomery County asking that the court declare that the dispensing of eyeglasses and contact lenses did not constitute the sale of tangible personal property which was subject to the Alabama sales tax. They also asked the court to declare that Department of Revenue Regulation P18-171 violated the Alabama and United States Constitutions’ prohibition against denial of equal protection and due process of law. Mr. M. L. Turner filed a complaint in intervention. He alleged that, as a citizen of Crenshaw County, where no ophthalmologists were located, he secured his eye examinations and eyewear from an optometrist, and that, therefore, he and others similarly situated were subjected to unconstitutional discrimination under sales tax Regulation P18-171, which provides for taxing the dispensing of eyeglasses by optometrists but not by opthalmologists.
In an amended complaint the plaintiffs alleged that optometrists are not engaged in a merchandising business, but perform skilled professional services for their patients, as members of one of the “learned professions,” when furnishing eyeglasses or contact lenses. In addition to declaratory relief, the plaintiffs prayed for injunctive relief against the imposition of the sales tax laws so as to require optometrists to collect and remit sales taxes on glasses and contact lenses dispensed by them in rendering services to their patients.
The defendant’s answer denied the plaintiffs’ essential allegations, prayed that the court uphold Regulation P18-171, and affirmatively asserted that in manufacturing and fitting glasses and contact lenses an optometrist sells at retail tangible personal property as contemplated by the sales tax law.
Following a hearing at which testimony was taken ore tenus, the trial court ruled that the regulation making a distinction in the sales tax incidence between ophthalmologists and optometrists who provide eyeglasses or contact lenses violated the Fourteenth Amendment of the United States Constitution, and that court enjoined the defendant from enforcing that rule as to so discriminate. The trial court also held that the cases of Haden v. McCarty, 275 Ala. 77, 152 So.2d 141 (1963); Lee Optical Company of Alabama v. State Board of Optometry, 288 Ala. 338, 261 So.2d 17 (1972), and State Tax Commission v. Hopkins, 234 Ala. 556, 176 So. 210 (1937), were binding authority on which to conclude that the sale and dispensing of eyeglasses and contact lenses constitutes a sale of tangible personal property as defined by the sales tax laws of Alabama.
In their appeal to this Court the plaintiffs maintain that the practice of optometry in Alabama has evolved into a “learned profession,” so that the dispensing of eyewear by optometrists to their patients is not a sale of tangible personal property under the sales tax law, but only the furnishing of a product incidental to the rendering of professional services.
Code of 1975, § 34-22-1, defines the “practice of optometry”:
(1) PRACTICE OF OPTOMETRY. Any of the following:
a. Any examination of the human eye and visual system for the purpose of:
1. Ascertaining any departure from the normal;
2. Ascertaining the status of the human visual system, including refractive and functional abilities thereof; or
3. Ascertaining the presence of ocular disease or ocular manifestations of systemic disease and any other departure from the normal which may require referral to other health care practitioners.
*1375 b. The diagnosis and treatment of the refractive and functional ability of the visual system for the purpose of the prevention, rehabilitation, correction and relief of anomalies of the visual system or visually related symptoms or disabilities or the enhancement of visual performance in accordance with accepted teaching by means of any or all of the following:
1. The prescribing and employment of ophthalmic lenses, prisms, frames, ophthalmic aids and prosthetic materials;
2. The prescribing and employment of contact lenses;
3. Administering visual training, or-thoptics and pleoptics; and
4. Providing advice regarding environmental factors which influence visual performance, safety and comfort.
Nothing in this section shall be construed so as to permit the administering of drugs in any form or prescribing of drugs for the medical treatment of eye diseases or the performing of surgery of any nature for any purpose.
Nothing in this section shall be construed so as to prevent the use and prescribing of the soflens or hydrophilic contact lenses and the solutions commonly used in the prescribing and fitting of contact lenses.
Nothing in this chapter shall be construed as repealing or affecting the provisions of section 38-1-2.
That statute levying the Alabama sales tax is Code of 1975, § 40-23-2, as amended by Act No. 592, Acts 1980, p. 788:
There is hereby levied, in addition to all other taxes of every kind now imposed by law, and shall be collected as herein provided, a privilege or license tax against the person on account of the business activities and in the amount to be determined by the application of rates against gross sales, or gross receipts, as the case may be, ... as follows:
(1) Upon every person, firm or corporation, ... in business of selling at retail any tangible personal property whatsoever, ... an amount equal to four percent of the gross proceeds of sales of the business ....
We must observe that the legislature has not exempted optometrists selling eyeglasses, etc., from the influence of this statute. This Court, however, in the past has limited the sway of the statute to the “taxable event” demonstrated by the services extended:
The test as to the application and validity of the tax in such cases [dealing with the manufacture and sale of eyeglasses] is not the relative value of the material and service, but the nature and character of the process, activities, or manufacture required or employed. That the matter is severable, ... does not change the fact or process of manufacture and sale of a tangible personal property made the subject of appropriate provisions of the statute. ... [Emphasis added, State Tax Commission v. Hopkins, 234 Ala. 556, 176 So. 210 (1937).]
In that case this Court recognized the distinction implicit in the exercise of professional skill, on the one hand, and the sale of tangible property on the other:
It is apparent from what we have said that the act should not be extended so as to tax one’s income from personal skill in the exercise of a profession. What we are dealing with is the manufacture and sale of glasses fitted to the eyes of the ultimate consumer, that is subject to the tax imposed by the appropriate provisions of the . . . act, ....
Though not directly in point, nevertheless an analysis of the basis for the statute’s application to optometrists was contained in Haden v. McCarty, 275 Ala. 76, 152 So.2d 141 (1963), when the respective roles of dentists and optometrists were compared in order to distinguish professional services from the sale of tangible property. In that case this Court adopted a description of dental services contained in the trial court’s decree:
“Dentists are not traders in commodities engaged in a merchandising business. A dentist is a practitioner of one of the true ‘learned professions’, like unto a phy *1376 sician or surgeon. Dentistry is one of the healing arts, a department of medicine; and dentists, like physicians, perform the very highest type of skilled professional services for their patients. Dentists are men of profession, who by virtue of their talents and aptitudes, and long years of study, and formal education, qualify themselves to serve mankind and to alleviate human suffering. When a dentist furnishes a prosthesis to his patient, this is an inseparable and indivisible part and parcel of the professional service of dentistry, which concerns itself with diagnosis, treatment, restoration, and prevention. A dentist does not, under the common understanding of things, or under the terms of the Sales Tax Act, make a sale to his patient. His relation to his patient is not that of merchant and ‘customer’ but that of doctor and patient; a close relationship requiring the skill and expertness that come with a concentrated background of education, training, and qualifications. A patient goes to a dentist seeking treatment and professional care and attention, and that is what he gets, and the amount paid the dentist by the patient is the dentist’s fee for professional services.
“The fashioning and furnishing of dentures, crowns, inlays, bridges, and similar medical prostetic [sic] devices, by a dentist, incidental to his professional care and treatment of his patient, is not a retail sale of tangible personal property under the Alabama Sales Tax Act. Skilled professional service is that which is required of the dentist, furnished by him to the patient, charged for by the dentist, and paid for by the patient.”
This Court recognized in that decision the inclusion of dentists within the “learned professions,” and with respect to the dental prostheses which were sought to be taxed, added:
The denture itself could not be separated from the treatment, examination, and other things leading up to fitting it in one’s mouth, and separately charged for....
But then a pertinent comparison was made:
On the other hand, eyeglasses need not be fitted by a trained professional man with a medical degree. The same risks to the over-all health are not necessarily involved. It is a matter of common knowledge that most “Five & Dime” stores will sell you a pair of eyeglasses. Optometrists merely measure the strength or weakness of the human eye and prescribe the type glasses needed. No medical technology is involved. An optometrist should make no attempt to treat eye diseases or fit a glass eye to his customers. These treatments would be left to the ophthalmologist, a medical doctor specializing in treatment of eye ailments.
In making that comparison this Court did not denigrate the practice of optometry; indeed we have recognized that it bears a “substantial relation to public health, and that it calls for special skill and knowledge of those practicing it ....” Lee Optical Co. of Alabama v. State Bd. of Optometry, 288 Ala. 338, 261 So.2d 17 (1972) citing Hampton v. Brackin’s Jewelry & Optical Co., 237 Ala. 212, 186 So. 173 (1939). Nevertheless, the Lee Optical decision itself held that the practice of optometry was not the practice of a learned profession:
There are several callings in the health care field, or the healing arts field, which cannot be classified as learned professions such as medical technicians, registered nurses, practical nurses, pharmacists, chiropodists, and perhaps others.
Then this Court quoted from one of the statutes regulating optometry at that time, Section 206:
“Nothing in this chapter shall be construed as authorizing any optometrist to administer drugs in any form, to practice or claim to practice medicine or surgery in any sense, or to use any title or appellation intended or calculated to indicate the practice of medicine or surgery.”
The presence of these provisions, this Court held, expressed a legislative policy rejecting the conclusion that optometry is “a subdivi *1377 sion of the practice of medicine.” Moreover, this Court in Lee recognized another distinction:
Nor do we consider that the relationship existing between an optometrist and patient rises to the degree of confidential relationship existing between doctor and patient or attorney and client. A person seeking the services of a physician or lawyer must reveal to such professional adviser the most intimate secrets of physical or mental disability, or of his business or conduct. As stated in Silver v. Lansburgh & Bro., 72 App.D.C. 77, 111 F.2d 518, such relationship by its very nature creates a relationship of trust and confidence, and the physician’s or attorney’s allegiance must be wholeheartedly to the patient or client, and not to another, and “nothing of this nature applies to the practice of optometry.” Ordinarily information of no great intimacy is revealed by one seeking only an eye examination looking toward securing proper lenses for eyeglasses.
And the fact that many callings require special skills, stated the Court, and thus were referred to as professions, did not make them “learned professions,” those having been recognized historically as the professions of law, medicine, the ministry, and sometimes the profession of arms. “Thus recognition,” this Court added, “has resulted from the inherent nature of the callings, and prior to, and not from any statutory enactments regulating their conduct.” (Emphasis added.)
While not disagreeing with these decisions, the plaintiffs maintain that the education, training and practice of optometrists has made such advances as to place optometry among the “learned professions,” and that the present statutes regulating optometry reflect these changes.
The record does reflect impressive educational requirements for the study of optometry at the University of Alabama, To some appreciable degree the admission and curricular requirements parallel those for medical and dental school students. The School of Optometry provides education and training in the diagnosis of ocular disease or ocular manifestations of systemic disease. Students are also offered courses in physiology, pharmacology, and ocular pathology. Clinical experience is extensive. The record made by the plaintiffs’ professional witnesses who themselves identify optometry as a “learned profession” is commendable.
We take note, moreover, that the legislation presently regulating optometry has undergone changes since the decision this Court rendered in Lee. The 1975 Act (Code of 1975, § 34-22-1) defines the practice of optometry as we have heretofore quoted.
But then the legislature added the following significant phrase:
Nothing in this section shall be construed so as to permit the administering of drugs in any form or prescribing of drugs for the medical treatment of eye diseases or the performing of surgery of any nature for any purpose. [Emphasis added.]
This restrictive language was enacted following the Lee decision. In that case this Court pointed out that a number of our sister states had, through legislation, specifically declared optometry to be a “learned profession.” The Lee decision itself had followed others to which we have alluded in which this Court had either declared optometry not to be a “learned profession” or otherwise referred to legislative policy as controlling on that issue. Indeed, in Lee itself, after this Court had implicitly, if not expressly, called to the legislature’s attention that it might change its policy and declare optometry a “learned profession,” our legislature amended the regulatory scheme without doing so, while it did, however, limit the practice with the language we have quoted. We have not here faced the situation in Haden v. McCarty, 275 Ala. 76, 152 So.2d 141 (1963), vis-a-vis dentists. There we were not guided by any clear legislative policy on that matter, while here we are faced with the clear legislative intent not to recognize optometry as a “learned profession” despite the language in Lee, which invited the legislature to declare optometry a “learned profession” if it *1378 so intended. Since the legislature did not do so, the language of the Lee opinion is cogent still, in our opinion:
We hold that in light of our statutory provisions and the policy to be deduced therefrom that the practice of optometry is not to be considered as the practice of a learned profession. Our statutes on optometry merely regulate the practice of optometry... . [288 Ala. at 349, 261 So.2d 17.]
Thus we hold that the essential purpose of our present optometry Act is, as it was at the time of the Lee decision, to license and regulate those who examine eyes and prescribe eyeglasses. Although the contemporary scientific, educational and clinical developments in that profession are noteworthy, nevertheless we do not denote any legislative intent to change that body’s policy so as to denote the practice of optometry as the practice of a learned profession. The legislative policy having remained essentially the same notwithstanding that line of relevant decisions beginning with State Tax Commission v. Hopkins, supra, we must adhere to it. For these reasons the judgment of the lower court must be, and is, affirmed.
AFFIRMED.
MADDOX, FAULKNER, ALMON, SHORES and EMBRY, JJ., concur.
JONES, J., concurs in the result.
TORBERT, C. J., dissents.
ADAMS, J., not sitting.