INGRAM, Judge.
The Department of Revenue of the State of Alabama (State) assessed retail sales tax against the taxpayer for the printing and delivery of newspapers to Sara Grant & Associates (Grant). After a hearing, the trial court upheld the assessment but waived a penalty assessed against the taxpayer for its failure to pay the tax, concluding that the taxpayer’s failure was in good faith. The taxpayer appeals.
The issue is whether the transactions between the taxpayer and Grant were taxable retail sales.
The record shows that Grant, not a party to this action, sought and obtained a licensing agreement with the U.S. Army at Ft. McClellan, Alabama, whereby Grant would publish a weekly newspaper for distribution by the Army at Ft. McClellan. The agreement provided that Grant would publish and deliver approximately 7,000 copies of the “McClellan News” to Ft. McClellan each week, which the Army would then distribute free of charge mainly to military-connected personnel at Ft. McClellan. The agreement provided for no financial arrangement between Grant and the Army; Grant’s profit would come from the advertising it sold to go in the newspaper. The agreement did provide that the Army would control all newspaper content and play a substantial role in its preparation (other than its actual publication), including a right to exclude from the paper that which it determined to be inappropriate advertising. In short, the agreement can be characterized as one that Grant sought in order to obtain a vehicle through which profits would be received from the sale of advertising space. The agreement expressly disclaimed that Grant, through its conduct as a publisher, could in any way expose the Army to financial or legal liability. The taxpayer had a copy of this agreement in its possession.
The record further shows that, having obtained this licensing agreement to publish a base newspaper for Ft. McClellan, Grant contracted with the taxpayer for it to do the necessary typesetting and printing of the paper. Eventually, Grant would do its own typesetting, but at all times material to this case the taxpayer printed and delivered the requisite number of finished copies of the paper to Grant. This printing and delivery of papers to Grant involved the transfer of newsprint and ink from the inventory of the taxpayer into the possession of Grant. Grant paid the taxpayer for this printing and delivery. The taxpayer did not have a contract, nor did it conduct business, with the U.S. Army. The taxpayer never listed Grant’s retail sales tax license number on the invoices recording the transactions between them.
The State characterized those transactions as sales at retail and accordingly assessed a tax and penalty against the *645 taxpayer for its failure to receive sales tax from Grant and remit the tax to the State. In Alabama, although the retail sales tax is levied against the ultimate consumer, the burden is upon the seller to collect from the purchaser the amount of tax due on a sale, and the State looks to the seller for the tax. Merriwether v. State, 252 Ala. 590, 42 So.2d 465 (1949). The trial court held that the transactions between the taxpayer and Grant were taxable retail sales and ordered the taxpayer to remit to the State a sum in the amount of $4,916. It also held that all penalties on the delinquent tax should be waived due to the apparent good faith of the taxpayer. The taxpayer appeals, contesting the validity of the tax assessment.
The taxpayer makes three arguments in support of its position that its transactions with Grant were not taxable retail sales: First, that Grant was an agent of the U.S. Army and that such agency with the federal government exempted Grant from sales tax under § 40-23-4(a)(17), Code 1975; second, that the transactions involved the performance of nontaxable services, rather than the taxable sale of tangible personal property; and third, that the transactions were not retail, but sales at wholesale, as defined by § 40-23-l(a)(9)a, Code 1975, and therefore not taxable retail sales.
The taxpayer contends that the degree of control exercised by the Army over the content and preparation of the newspaper made Grant an agent of the Army, despite the written agreement between Grant and the Army disclaiming such a relationship. It is true that a contract which directly disclaims an agency relationship will not preclude a finding of agency if there is independent evidence of a retained right of control. Wood v. Shell Oil Co., 495 So.2d 1034 (Ala.1986). However, the control that the Army exercised did not include control over the actual publication of the paper. The taxpayer had in its possession the agreement between Grant and the Army, which makes quite clear who would be obligated by Grant in having the paper printed, or should there ever occur such legal consequences as libel resulting from the paper’s publication and distribution. That is, neither the reservation nor the exercise of the Army’s power over the content of the paper gave to Grant the status of an agent of the federal government to enter into contracts or to pledge its credit. Considering the nature of the contractual relationship between the taxpayer and Grant and further considering that the taxpayer had in its possession the agreement between Grant and the Army, we do not think it credible that the taxpayer believed it had a recourse against the Army should Grant breach its contract with the taxpayer. Such a belief is also a test of agency. All South Bonding Co. v. State, 497 So.2d 499 (Ala.Civ.App.1986). The trial court did not err on this ground.
The issue is raised as to whether the taxpayer’s printing of newspapers for Grant was a nontaxable “service,” rather than a taxable retail sale. For guidance toward an answer to this we look first to the only Alabama case concerning commercial printing. In the case of Long v. Roberts & Son, 234 Ala. 570, 176 So. 213 (1937), our supreme court applied the reasoning of the case of State Tax Commission v. Hopkins, 234 Ala. 556, 176 So. 210 (1937). The Hopkins court had held that where the value of the material employed in the manufacture of eyeglasses and the subsequent fitting of them to the customer constituted only 20% of the total price charged to the customer for the finished product, the test for sales tax liability was not the relative value of the material to the service, but was determined by the nature and character of the process required or employed in the production of tangible personal property. The Long court applied this rationale to determine that in the commercial printing, lithographing, engraving, and bookbinding trade, forms, circulars, pamphlets, etc., printed to a customer’s order, constituted merchandise as commonly understood in the commercial world and were subject to the sales tax. So it is clear that the tax liability question before us reaches beyond the mere withdrawal of paper and ink from the taxpayer’s inventory-
The production of a newspaper in this case was the production of a finished prod *646 uct manufactured by the taxpayer to the content and form specifications furnished by Grant and for the purpose of being distributed by Grant to a broad segment of military and civilian support personnel of this large East Alabama military reservation.
In State v. Harrison, 386 So.2d 460 (Ala. Crim.App.1980), we held that the creation of catalogs or brochures and the subsequent transfer of such materials to a client after printing were incidental to professional public relations service rendered through an advertising agency, and thus there was no sale of tangible personal property within the sales tax act. We do not find this case applicable to the one at bar. Harrison would only be germane to the instant case if the transfer in question in that case had been between the printer and the public relations agency. At issue in Harrison was the nature of the “product” that the public relations agency sold to its client. We stated that “[t]he appellee does much more than merely sell a client catalogues and brochures.” Harrison, supra, at 461. Namely, what the public relations agency sold in that case was its talent and skill in matters relating to public relations. The question was not addressed in that case whether the contract between the agency and the printer involved taxable retail sales. That is the question we have at bar.
We thus hold that Long is controlling here and that the printing and delivery of newspapers by the taxpayer to Grant were taxable retail sales, not nontaxable services. Grant contracted for what we cannot determine to be anything other than the delivery of tangible personal property. She desired the delivery of the newspapers — the labor involved in the production of the contemplated object of the contract was merely incidental to the delivery of that finished product. As stated in 68 Am. Jur.2d Sales and Use Taxes § 85, at 130-31 (1973):
“While it has been held that the performance of various kinds of job printing does not, under a proper construction of the sales tax statutes involved, constitute the making of retail sales, what are referred to as ‘the better reasoned cases’ agree that the production and transfer of printed material and the like is not personal service but a sale....
“Thus, it has been held that the printing and furnishing of newspapers to a publisher who distributes them without charge, as in the case of community newspapers, ... amount[s] to the making of retail sales within the meaning of sales tax statutes of various kinds.”
Also see id. § 86, at 133.
The taxpayer’s final argument that the transactions between the taxpayer and Grant were sales at wholesale and not subject to the retail sales tax does not withstand examination. The State argues that the transactions were prima facie retail sales. This is based partly on the requirement that sales tax license numbers be listed on such transactions if the sales at wholesale are exempt from retail sales tax. The taxpayer did not so record this number on its transaction documents with Grant.
By definition, sales at wholesale are not subject to retail sales tax. Section 40-23-l(a)(9)a, Code 1975, defines a sale at wholesale as
“[a] sale of tangible personal property by wholesalers to licensed retail merchants, jobbers, dealers, or other wholesalers for resale and does not include a sale by wholesalers to users or consumers, not for resale_” (Emphasis supplied.)
The taxpayer contends that Grant was not the ultimate consumer of the newspapers and that Grant received indirect compensation for the transfer of the papers to Ft. McClellan through the advertising it sold, thereby rendering the transactions sales at wholesale, since the papers were in effect “resold.” We disagree.
The purpose of the retail sales tax is to tax the ultimate consumer, regardless of who this may be. State v. T.R. Miller Mill Co., 272 Ala. 135,130 So.2d 185 (1961). The purpose of the section defining retail sales is to reach and tax transactions which do not fall within the usual definition of a retail sale. Otherwise there would be no taxable event. White v. Campbell & Associates, Inc., 473 So.2d 1071 (Ala.Civ.App. *647 1985). The point is that the purpose of the legislation is to levy a sales tax on transactions determined to be sales at retail. The taxpayer sold finished newspapers to Grant; those papers were delivered to Ft. McClellan, which distributed them free of charge to the base, pursuant to a licensing agreement between Grant and the Army; the papers were not sold to the Army or to its personnel; nor were they sold to the advertisers who placed ads therein. We are not prepared to diverge from the plain meaning of the word “resale” and hold that the papers were, in effect, sold by Grant to either the advertisers or the Army. The trial court did not err, therefore, in holding that the transactions between the taxpayer and Grant were not sales at wholesale.
Finally, the State raises the issue of whether the trial court could properly review the State’s assessment of a penalty against the taxpayer for its failure to pay the tax. That is, the State argues that the court erred in waiving the penalty against the taxpayer for an apparent good faith failure to pay the tax. It argues that § 40-23-16, Code 1975, and State v. Leary & Owens Equipment Co., 54 Ala.App. 49, 304 So.2d 604 (1974), lodges the discretion to waive a penalty in the State and not a trial court. Since the State did not raise this issue in a cross-appeal, as provided by Rule 4(a)(2), Alabama Rules of Appellate Procedure, we are precluded from reviewing the issue. See Johnson v. Salter, 359 So.2d 417 (Ala.Civ.App.1978).
The trial court’s judgment that the tax levied by the State was valid, but that the penalty was due to be waived, is therefore affirmed.
AFFIRMED.
BRADLEY, P.J., concurs.
HOLMES, J., dissents.