**SILVER v. LANSBURGH & BRO. et al.**

**No. 7507.**

United States Court of Appeals for the District of Columbia.

Argued Feb. 6, 1940.

Decided March 25, 1940.

Edwin A. Swingle and Ernest A. Swingle, both of Washington, D. C., for appellants.

Simon Lyon, R. B. H. Lyon, and Richard K. Lyon, all of Washington, D. C., and Robert Rosenberg, of Harrisburg, Pa., for appellees.

Before GRONER, Chief Justice, and EDGERTON and RUTLEDGE, Associate Justices.

GRONER, C. J.

The one question for decision is whether a corporation in the District of Columbia may lawfully employ a licensed practitioner of optometry to perform optometrical services for those to whom the corporation offers such services.

Appellants are licensed and registered optometrists. They brought this suit in behalf of themselves and others similarly situated against appellees, Lansburgh & Bro., a corporation conducting a large department store in Washington City, and Buhl Optical Company, a District corporation organized to operate and own optical and optometrical stores, to restrain them from directly or indirectly engaging in the practice of optometry in the District of Columbia. The right to bring the suit is not challenged. Cf. Ezell v. Ritholz, 188 S.C. 39, 198 S.E. 419, 423, and cases cited there.

Appellants, in the main, base their claim for injunctive relief upon the ground that optometry is a learned profession, the very nature of which, they say, prohibits the practitioner thereof from any affiliation or connection with a corporation or non-optometrist. Appellees answered, and on the trial of the case, a jury being waived, the court made findings of fact and conclusions of law, and dismissed the bill.

The court found that optometry is a mechanical art which requires skill and a knowledge of the use of certain mechanical instruments and appliances designed to measure and record the errors and deviations from the normal found in the human eye, but is not a learned profession comparable to law, medicine, and theology, and that, though certain standards of education are prescribed by the statute and by rules of the board created under it, optometry is not a part of medicine. The court was, therefore, of opinion that neither defendant is engaged in the practice of optometry contrary to the statute. In the recent case of United States v. American

Medical Association (decided March 4, 1940), —— App.D.C. ——, 110 F.2d 703, we pointed out that the practice of medicine in the District of Columbia is subject to licensing and regulation, and we stated that, in our opinion, it might not lawfully be subjected to commercialization and exploitation. We cited many authorities holding that a corporation engages unlawfully in the practice of medicine when it employs licensed physicians to treat patients, itself receives the fee, and the profit object is its main purpose, the arrangement being such as to divide the physician's loyalty and destroy the well recognized confidential relation of doctor and patient. This brings us, then, to consider whether this rule applies to the practice of optometry.

■ Congress in 1924 passed an optometry licensing act applicable to the District of Columbia.[1] Optometry is there defined to be "the application of optical principles through technical methods and devices in the examination of the human eye for the purpose of determining visual defects, and the adaptation of lenses for the aid and relief thereof".[2] It is unlawful for any person to engage in the practice until he shall have complied with the requirements of the Act.[3] These requirements are that he must be a person over twenty-one years of age of good moral character, who has had a primary education equivalent to a two-years' course in a first-class high school and who is a graduate of a school of optometry in good standing, and who shall pass an examination consisting of tests in practical optics, theoretic optometry, anatomy and physiology, and such pathology as may be applied to optometry, practical optometry, theoretic and physiologic optics. Upon compliance with these conditions, the applicant is entitled to a license, but the Act provides that this shall not include the right to use any title or any word or abbreviation indicating that he is engaged in the practice of medicine, surgery, or the treatment of the eye, or the diagnosis of diseases of or injuries to the eye, or the writing or issuing of prescriptions for the obtaining of drugs or medicine in any form for the treatment or examination of the eye. Many states have similar or nearly similar statutes, but their courts have disagreed on whether optometry is a learned profession. We have considered the cases, and are of opinion the best considered adopt the view that optometry is not "one of the learned professions".

Optometry is said by a well known writer on the subject not to be a part of medicine, "either by inheritance, basic principles, development or practice". It is "an applied arm of optical science resting upon the work and discoveries of physicists and opticians through the ages down to modern times. It does not treat the eye, whether in health or disease, but adapts the light waves which enter the eye, in accordance with optical principles so as to produce focused and single vision with the least abnormal exertion on the part of the eye". Arrington's History of Optometry, p. 24 (1929).

■ The District of Columbia statute neither requires nor contemplates that an optometrist shall be a graduate physician or that he shall, like an oculist, diagnose or treat diseases of the eye. In actual practice, the function which he performs is in measuring the refractional abnormalities of the eye and prescribing, and sometimes grinding, the lenses to correct them. The distinction between oculists and optometrists is succinctly stated by the New Jersey Supreme Court in New Jersey State Board v. Kresge Company, 113 N.J.L. 287, 174 A. 353, 357: "Oculists and ophthalmologists pursue a calling quite distinct from that of optometrists. The first has relation to the practice of medicine and surgery in the treatment of diseases of the eye, and the second to the measurement of the powers of vision, and the adaptation of lenses for the aid thereof."

And in the following cases the difference in methods of practice is described and explained. Georgia State Bd. v. Friedmans' Jewelers, 183 Ga. 669, 189 S.E. 238; State v. Gus Blass Co., 193 Ark. 1159, 105 S.W.2d 853; Dvorine, et al. v. Castelberg Jewelry Corp., 170 Md. 661, 185 A. 562. The cited cases base the distinction mainly upon the difference in the required degree of learning and training and, based on this difference, hold that where the statute itself does not specifically control, the reasons for preventing the practice of law and medicine through corporations do not

---

[1] Act of May 28, 1924, 43 Stat. 177, c. 202, D.C.Code 1929, Tit. 20, secs. 261-282.

[2] Sec. 1, D.C.Code, Tit. 20, sec. 261.

[3] Sec. 2, D.C.Code, Tit. 20, sec. 262.

apply to optometry. But we prefer to rest our view upon the broader distinction arising out of the traditional relationship between physician and patient and attorney and client, a relationship which does not exist in the practice of optometry. The professional service required of the former, of its very nature, creates a relationship of trust and confidence. Both in the case of the physician and the lawyer, the person seeking his services must break down the barriers of reserve which otherwise serve to protect him and deliberately reveal to his professional adviser secrets of physical or mental disability or secrets of business of the most intimate nature.[4] These necessary disclosures create the personal relationship which cannot exist between patient or client and a profit-seeking corporation. The universal recognition of this immediate, unbroken, and confidential association between doctor and lawyer and those who engage their services early created and still justifies the rule that their allegiance must be wholeheartedly to the patient or the client, and not to another. Nothing of this nature applies to the practice of optometry.

In this view, we may very well concede that optometry is a profession, as that term is now colloquially used, but that fact is not enough to bring the rule into effect. There is no more reason to prohibit a corporation, organized for the purpose, from employing licensed optometrists, than there is to prohibit similar employment of accountants, architects, or engineers. We know of no instance in which the right in any of those cases has ever been challenged, though universally all are deemed professions.

We find nothing in the statute to indicate that Congress intended to prohibit corporations from employing licensed optometrists. Its primary purpose was to insure that the service would be rendered by competent and licensed persons and thereby to protect the public from inexpertness. That purpose may be fully accomplished, though the person rendering the service is employed by a corporation.

We think the lower court was correct in denying injunctive relief, and the decree is, therefore, affirmed with costs.

Affirmed.

---

[4] For a full statement of the reason of the rule, see "The Philosophy of Professional Licensure", address of Honorable Justin Miller, Proceedings of the Annual Congress on Medical Education, etc., Chicago, Feb. 12 and 13, 1934.