Argued October 9, affirmed as modified November 1, 1961

# STATE ex rel REED *v.* KUZIRIAN

### 365 P. 2d 1046

*Thomas J. Moore,* Portland, argued the cause for appellant and cross-respondent. On the briefs were Schedler & Moore, Portland.

*Seymour L. Coblens,* Special Assistant Attorney General, Portland, argued the cause for respondent and cross-appellant. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Dean F. Bryson, Portland, filed a brief for the Oregon Optometric Association as *amicus curiae.*

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

## SLOAN, J.

Defendant, by the assumed business name of Oregon Contact Lens Service, had been engaged in selling and fitting contact lenses. This proceeding was brought to enjoin the defendant from doing certain of the acts thereby involved which were alleged to have required the professional knowledge of a doctor of

medicine or of optometry. The trial court issued an injunction restraining the acts complained of. Defendant appeals. Plaintiffs have cross-appealed as to one portion of the decree. We will discuss the cross-appeal later.

Defendant was a dispensing optician. The state requires no license nor does it make any requirement of skill to engage in this occupation. Defendant was not licensed as either an optometrist or medical doctor. For some years he had been engaged in the activities which lead to this suit. The findings of fact entered by the trial court described what these activities had been:

"III.

"The defendant is a dispensing optician and has been and now is engaged in such business at 734 Southwest Morrison Street, Portland, Oregon, under the name and style of Oregon Contact Lens Service, and has been advertising and holding himself out to the public as specializing in the fitting of contact lenses.

"IV.

"The defendant has established a practice of measuring a portion of the radius of the cornea of his customer's eyes, exercising his judgment regarding the proportions and dimensions of other portions of the cornea of the measured eyes, and using these findings together with refraction findings gleaned from other sources, to determine the ultimate qualifications of the lenses he then delivers.

"V.

"The defendant usually gains refraction information by prescription from duly qualified and authorized sources but has gained such information from study, measurement and comparison of the customer's glasses then in use.

## "VI.

"This defendant does insert, fit and adjust contact lenses into the eyes of persons both upon a trial and a finished basis, and has advised persons, after trial, that they could wear contact lenses.

## "VII.

"The insertion, fitting and adjusting of contact lenses involves the introduction of foreign material into a most delicate orifice of the body and is a process which concerns the health and welfare of the public and requires the exercise of professional skill and judgment."

The professional skill and judgment mentioned in finding VII refers to that required of a licensed doctor of optometry or of medicine.

That part of the decree from which defendant appeals enjoined him from:

"(a) Measuring and examining the eyes of any person or persons whatsoever for the purpose of determining whether such individual could use contact lenses.

"(b) Giving advice to any person or persons whatsoever as to whether they could wear contact lenses.

"(c) Inserting, fitting and adjusting contact lenses into the eyes of any persons whatsoever.

"(d) Advertising by any means whatsoever that he will perform the said acts, or that he has special skills with reference to the insertion, fitting and adjustment of contact lenses."

Defendant does not claim that he should be permitted to examine eyes to determine if a given person "could use contact lenses" nor does he claim the right to give advice. His particular challenge to the decree is directed at paragraph (c) restraining him from "inserting, fitting and adjusting contact lenses into

the eyes of any persons whatsoever." He contends that this is a proper function of a dispensing optician and that professional people can delegate that function to the optician. It has been a long established and recognized practice in regard to the fitting of spectacles, says defendant, for the professional eye examiner to issue a prescription which does nothing more than specify the visual correction and power of the lens to be supplied to the doctor's patient. Thereafter, it has then been the function of the dispensing optician to provide a lens meeting the doctor's prescription and fit the lens into a suitable frame. It has been left to the optician, in most instances, to do the required measuring and fitting essential to meet the needs of the individual who must wear the spectacles. Common experience and the evidence in this case would confirm that with respect to spectacles, this has been the practice.

It should be noted that the fitting of glasses has been held to require professional skill and judgment. *Dellinger v. Arkansas State Board of Optometry*, 1949, 214 Ark 562, 217 SW2d 338.

Taking the fitting of spectacles by the optician as an accepted practice, defendant then argues that he should be permitted to follow the same practice in the fitting of contact lenses. He would ask the court to hold that the fitting of contact lenses is purely a mechanical process involving no professional skill or judgment. He claims that the optician can measure the size and shape of the cornea of the eye and determine the size and shape needed by a particular person to assure a satisfactory fit of the lens to the eye. He does concede, however, that after he, as an optician, has made this determination and fitted the lens to the eye, that it is necessary for the professional person to

make further examination to determine if the lens is causing injury to the eye.

In considering the arguments of defendant, we will first examine the evidence to find what had been the actual practice in respect to the function of the professional man and of the optician in respect to contact lenses and, secondly, we will examine the evidence as to the amount of professional skill and judgment that is required to fit contact lenses.

The evidence in this particular case disclosed that some of the professional eye doctors, both medical and optometrist, exercised a much higher degree of control over the fitting of contact lenses than did others. Some of the doctors would send a patient to plaintiff with a bare prescription as to visual correction to be put into the lens. The prescription in some instances would contain a notation that the patient could try contact lenses. It would thus be left entirely to defendant to measure the size and shape of the person's eye and decide the shape and curvature of the contact lenses; and the primary responsibility to fit the lens when it had been made. Defendant testified that after he had made the initial fitting and testing that he had always told the person to return to his doctor for a check. But there was also evidence to show that persons he had fitted with lenses would return repeatedly to defendant, not to the doctor, for adjustment and testing.

Other doctors would examine the patient to decide the size and shape as well as the visual correction of the lens. Those doctors would then include that data as a part of the prescription. When the lenses were completed, defendant, in some instances, still had the primary responsibility of making the initial fitting and testing as to shape and size.

Other doctors would only order the lenses from defendant. When the lenses were completed, these doctors would require defendant to bring the lenses to the doctor's office and there fit the lenses and test them under the doctor's personal supervision. Or the doctor would perform the full operation himself. One optometrist, who was called as a witness for defendant, testified that he considered the fitting of the lenses to be a part of his professional responsibility. The witness testified that he exercised full control of the process.

The evidence also disclosed that this process of fitting and adjusting was a time consuming process. Frequently, it would require weeks of trial and error. Therefore, it is hard to tell, from this evidence, whether the doctors who relied entirely on defendant to fit the lenses were lazy, indifferent or had more confidence in defendant's ability to perform the full function.

It can be said, then, that there was no fixed pattern of the division of responsibility between the various doctors and defendant. It seems shocking to relate that much the highest percentage of prescriptions for contact lenses received by defendant left to him the major responsibility of making the initial tests to determine size as well as the actual fitting of the lenses. The testimony of another optician indicated the same practice existed at the place of the witnesses' employment.

Above all, however, it is clear from the evidence without any reasonable doubt, that the fitting of the lenses required some degree of professional skill and judgment.

It is our view of the record, therefore, that the evidence supported the findings of fact entered by

the trial court and justified the injunction. There was testimony from all of the professional witnesses called that even if the lenses felt comfortable to the person wearing them that harm to the eye could still result. It was not disputed that only professional skill and judgment could detect the harm or the likelihood of harm. There was evidence to show that such harm could be serious. Defendant's own testimony that he urged all of his customers to return to their doctor for a final check and tests permits the inference that professional attention was essential.

There was other testimony which established that the mechanical tests for size and shape were not conclusive and that the peculiar nature of the lens and shape of each individual's eye required professional judgment as well as mechanical exactness. There was evidence that the curvature of the eye, so essential to a proper fit, was not the same in any two persons.

Defendant also attempts to sustain his position by reference to the statutes in respect to the practice of optometry. ORS 683.010 (2) defines the practice of optometry as the "employment of any means other than the use of drugs for the measurement or assistance of the powers or range of human vision or the determination of the accommodative and refractive states of the human eye or the scope of its functions in general or the adaptation of lenses or frames for the aid thereof."

ORS 683.190 provides:

"No person other than a registered optometrist shall accept or offer to accept for purposes of duplication any ophthalmic lens ordinarily used before the human eye for corrective purposes or for assisting vision. However, any manufacturing, dispensing or surfacing optician may grind or supply any such lens in conformity with the prescrip-

tion or instruction of any optometrist duly licensed to practice in this state."

■ Defendant argues that the permission to an optician to grind or supply lens contained in ORS 683.190 authorizes him to fit as well as to grind and supply a lens. We do not agree. What has already been said refutes the contention.

■ Defendant argues further that injunction is not available as a remedy. We find no merit in the contention. *State ex rel Sisemore v. Standard Optical Company,* 1947, 182 Or 452, 467, 188 P2d 309, *Seifert v. Buhl Optical Co.,* 1936, 276 Mich 692, 268 NW 784. See case note Volume 23 Mo L Rev 105, (1958).

■ We conclude that defendant's appeal must fail and hold the acts of defendant enjoined by the trial court constitute the practice of optometry.

It is necessary to consider the cross-appeal. In addition to the portion of the decree before quoted, the decree contained this further injunction:

"II.

"That except when acting under proper direct supervision of legally qualified personnel, the defendant is enjoined and prohibited from:

"(a) Measuring portions of the cornea of any persons whatsoever, and based upon such measurement and his judgment, determining what he deems to be the appropriate size and curvature of contact lenses suitable for use by said person; and,

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that this Court retain jurisdiction over this cause for the purpose of enforcement of this decree."

The cross-appeal asks that we strike from the decree the words: "except when acting under proper direct

supervision of legally qualified personnel . . ." It was argued by plaintiffs that the inclusion of these words permitted the professional man to delegate his professional responsibility. Defendant counters with much the same arguments before advanced. He says he is only filling a prescription prepared by the doctor and nothing more. He relies on a Kentucky case of *Frank v. South,* 1917, 194 SW 375, 175 Ky 416. That case involved the assignment of duty from a doctor to a nurse. The case holds that it is not practicing medicine for a nurse to exercise judgment when following the order of a doctor. There is a material difference between a nurse, who has professional skill in her own right, and an optician who, so far as the law is concerned, needs none. The case does not help defendant.

■ The evidence does show that defendant may have had a proper function to fulfill when he assisted the doctor in fitting contact lenses within the actual personal supervision of the professional person. That does not mean by telephone or written communication but direct personal supervision. The modification of the decree urged by the plaintiffs would deprive defendant of that function when it might be requested of him by the doctor. We think the decree should be amended so as to read: That except when acting under direct personal supervision of legally qualified personnel, the defendant is enjoined and prohibited from:

"(a) Measuring portions of the cornea of any persons whatsoever, and based upon such measurement and his judgment, determining what he deems to be the appropriate size and curvature of contact lenses suitable for use by said person."

As modified, the decree is affirmed.