ATTORNEY GENERAL, *ex rel.* BOARD OF EXAMINERS
IN OPTOMETRY, *v.* PETERSON.

SAME *v.* SMEELINK.

1. ATTORNEY GENERAL—CHIEF LAW ENFORCEMENT OFFICER.
    The attorney general is the chief law enforcement officer of the
    State.

2. PHYSICIANS AND SURGEONS—OPTOMETRY—STATUTE—OPTOMETRY
BOARD.
    The board of examiners in optometry is charged with the ad-
    ministration of the optometry act (CLS 1961, § 338.251 *et
    seq.*).

3. SAME—OPTOMETRY—CONTACT LENSES.
    Examination of the human eye for contact lenses and the fitting
    or insertion of contact lenses to the eye is included in the
    definition of the practice of optometry by statute (CLS 1961,
    § 338.257[d]).

4. EQUITY—JURISDICTION—PENAL STATUTES.
    The existence of a penal provision in a statute or an ordinance
    does not necessarily have the effect of ousting the chancery
    court of jurisdiction, where prosecution does not afford an
    adequate remedy.

5. SAME — STATUTES — OPTOMETRY ACT — OPTICIANS — CONTACT
LENSES.
    Equity has jurisdiction to enjoin opticians from examining and
    measuring a patient's eyes for the purpose of fitting and
    adjusting contact lenses without the supervision of a li-
    censed optometrist, oculist, or ophthalmologist as such treat-
    ment is contrary to optometry act; notwithstanding violation
    of the act is a crime and criminal action could be instituted

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 7 Am Jur 2d, Attorney General § 1.
[2, 3] 41 Am Jur, Physicians and Surgeons § 28.
    What constitutes practice of "optometry."   88 ALR2d 1290.
[4, 5] 27 Am Jur 2d, Equity § 57.
[6] 5 Am Jur 2d, Appeal and Error § 1009.

against defendant opticians or their agents (CL 1948 and CLS 1961, § 338.251 *et seq.*).

6. COSTS — PUBLIC QUESTION — INJUNCTION — OPTICIANS — CONTACT LENSES.

   No costs are allowed in suit to enjoin defendant optician from examining patients for contact lenses and fitting and adjusting such lenses, a public question being involved (CL 1948 and CLS 1961, § 338.251 *et seq.*).

Appeals from Kent; Vander Ploeg (Claude), J. Submitted Division 3 April 6, 1966, at Grand Rapids. (Docket Nos. 346, 346-1/2, 349.)   Decided October 25, 1966.   Rehearing denied December 1, 1966. Leave to appeal granted by Supreme Court February 21, 1967.   See 378 Mich 751.

Bill of complaint by Frank J. Kelley, Attorney General, on the relation of the Michigan Board of Examiners in Optometry, to enjoin Martin C. Peterson and Forest W. Sattler, doing business as The Optical House, and Judson L. Smeelink and Elaine D. Smeelink, and Smeelink Optical Service, Inc., a Michigan corporation, from examining and measuring patients' eyes for the purpose of fitting contact lenses.   Injunctive judgment for plaintiff.   Defendants appeal.   Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Joseph B. Bilitzke,* and *Maurice M. Moule,* Assistant Attorneys General, for the plaintiff.

*Woodrow A. Yared,* for defendants Martin C. Peterson and Forest W. Sattler.

*Berton Sevensma,* for defendants Judson L. Smeelink and Elaine Smeelink.
*Amici Curiae:*

Detroit Ophthalmological Society, by *Frederick C. Weyher.*

Michigan State Medical Society, by *Lester P. Dodd.*

BURNS, P. J.   Although the late Judge WATTS heard oral arguments on this case, his death occurred prior to preparation of the opinion.

The above 2 cases were consolidated for trial and also on appeal. The appellants are opticians in the city of Grand Rapids. Prior to the innovation of contact lenses appellants were primarily engaged in the business of fabricating eyewear for ordinary eyeglasses from prescriptions received from ophthalmologists.

With the advent of contact lenses they took additional training in the field of contact lenses and entered into a working arrangement with several ophthalmologists in the city of Grand Rapids. The general procedure was for the patient to have an eye examination by a duly licensed ophthalmologist to determine the necessary refraction for visual acuity, after which the ophthalmologist gave the necessary prescription to the patient and referred him to one of the appellants.

The appellants then examined and measured the patient's eyes and advised the patient as to whether he could wear contact lenses or not. The appellants determined the size, degree of curvature, type of bevel, and all other characteristics of the lenses, except the refraction. After the manufacture of the lenses the appellants fitted and adjusted them.

Plaintiff-appellee is the chief law-enforcement officer of the State of Michigan. The Michigan board of examiners in optometry is charged with administering the optometry act, PA 1909, No 71,

as amended, (CL 1948 and CLS 1961, § 338.251 *et seq.* [Stat Ann 1956 Rev and 1965 Cum Supp § 14.641 *et seq.*]).

A bill of complaint was filed on September 28, 1962, to enjoin the appellants from the above described practice. A temporary injunction was issued by the trial court on November 5, 1962, and after extensive hearings the injunction was made permanent on November 9, 1964.

The trial judge made the following findings of fact which are substantiated by the record:

"Defendants have admitted that for a period of years prior to the said preliminary injunction they measured the eyes of persons for contact lenses with a keratometer or ophthalmometer without supervision of a licensed optometrist, oculist, or ophthalmologist.

"The defendants for a period of years prior to said preliminary injunction inserted, fitted, and adjusted contact lenses in the eyes of persons without the supervision of a licensed optometrist, oculist, or ophthalmologist, and gave advice to persons as to whether they can wear contact lenses.

"After a patient had been examined by an ophthalmologist for a nominal fee, the patient dealt solely with the defendants in regard to the manufacture, measuring, fitting, and adjustment of the contact lenses; and the defendants received the entire purchase price for the contact lenses."

The expert testimony accepted by the trial court was that there is a reasonable relationship between the public health and welfare and the requirement of the optometry act with respect to contact lenses.

CLS 1961, § 338.257(d) (Stat Ann 1965 Cum Supp § 14.647[d]) includes in its definition of the practice of optometry the following:

"The examination of the human eye for contact
lenses and the fitting or insertion of contact lenses
to the eye."

The trial court enjoined the defendants from:

"1. Measuring and examining the eyes of any
person or persons whatsoever for the purpose of
determining whether such individual could wear con-
tact lenses.

"2. Giving advice to any person or persons what-
soever as to whether they can wear contact lenses.

"3. Inserting, fitting and adjusting contact lenses
into the eyes of any person whatsoever.

"4. Advertising by any means whatsoever that he
will perform the said acts or that he has special
skills with reference to the insertion, fitting, and
adjusting of contact lenses."

Appellants claim the trial judge erred by granting
an injunction, as the appellees had an adequate
remedy at law, for the violation of the act is a crime
and criminal action could be instituted against the
defendants or their agents.

In our opinion this case falls in the category of
cases set forth in *Dearborn National Insurance Com-
pany* v. *Commissioner of Insurance* (1950), 329 Mich
107, where the Court stated on pp 118, 119:

"We do not agree with appellants that under the
circumstances of this case the authority of the com-
missioner must be found solely in said section, or
that equity has no jurisdiction under these circum-
stances on the ground that said section is a penal
statute, enforcement of which must rest solely in
an arrest and conviction for a misdemeanor.  The
existence of a penal provision in a statute or an
ordinance does not necessarily have the effect of
ousting the chancery court of jurisdiction, where
prosecution does not afford an adequate remedy.
*People, ex rel. Secretary of State,* v. *State Ins. Co,*

[1869], 19 Mich 392; *Board of Health of the City of Grand Rapids* v. *Vink* [1915], 184 Mich 688; *Township of Warren* v. *Raymond* [1939], 291 Mich 426. The remedy provided by said section—prosecution of an officer or director for a misdemeanor, does not afford an adequate remedy for the protection of the policyholders or creditors of the appellant insurance companies, or of the public. Equity has jurisdiction, under the circumstances of this case."

The same can be said of the general public and the patients involved in our present case, and equity *does* have jurisdiction to issue an injunction.

None of the remaining 3 grounds alleged as errors for appeal merit discussion because they are not consistent with the facts as established by the testimony, the record, and as found by the trial court. These grounds are all based upon the premise that the services performed by the appellants were performed under the supervision of an ophthalmologist. As previously stated, the record does not establish that these acts were performed under such supervision.

Judgment of the trial court is affirmed. No costs, a public question being involved.

FITZGERALD, J., concurred.