Norman **FIELDS**, Petitioner,

v.

**DISTRICT OF COLUMBIA**, Respondent.

No. 21185.

United States Court of Appeals
District of Columbia Circuit.

Decided Feb. 2, 1968.

---

**1324**

Spottswood W. Robinson III, Circuit Judge, dissented.

Mr. George Greenberg, Washington, D. C., was on the petition for petitioner.

Messrs. Charles T. Duncan, Corporation Counsel for the District of Columbia, Hubert B. Pair, Principal Asst. Corporation Counsel, and Richard W. Barton and John R. Hess, Asst. Corporation Counsel, were on the opposition to the petition for respondent.

Mr. Warren E. Magee, Washington, ·D. C., filed a memorandum on behalf of the Medical Society of the District of Columbia as amicus curiae in·support of petition for reconsideration.

Mr. Robert W. Burton, Washington, D. C., filed memoranda on behalf of Contact Lens Society of America, Inc. and Guild of Prescription Opticians of Washington, D. C., Inc., as amici curiae in support of petition for reconsideration.

Mr. M. Joseph Stoutenburgh, Washington, D. C., filed a memorandum on behalf of the Guild of Prescription Opticians of America, Inc., as amicus curiae in support of petition for reconsideration.

Before Danaher, Leventhal and Robinson, Circuit Judges.

PER CURIAM:

This is a petition for allowance of an appeal from the District of Columbia Court of Appeals. The District of Columbia Court of General Sessions found that petitioner, an optician, had practiced optometry without a license[1] by his unsupervised fitting of contact lenses. Since this was obviously prosecuted as a test case, no sentence was imposed on petitioner; imposition of sentence was suspended upon his giving of personal bond not to repeat the offense. On ap-

[1]. D.C.Code Ann. § 2-501 (1967) defines the practice of optometry. Section 502 makes unlicensed practice of optometry a misdemeanor.

peal, the District of Columbia Court of Appeals affirmed, construing the District optometry statute to make any fitting of contact lenses the practice of optometry. Petitioner and several amici [2] have asked this court to review the court of appeals' decision, pointing out its impact on contact lens work and on opticians, optometrists, and ophthalmologists generally in the District of Columbia.

This court exercises a type of certiorari jurisdiction over the District of Columbia Court of Appeals.[3] Rule 1 of our rules governing appeals from that court, which is based on present Sup. Ct.R. 19, emphasizes that appeal is "not a matter of right, but of sound judicial discretion, and will be granted only where there are special and important reasons therefor."[4] The fact that a number of individuals will be affected by the local court's decision is not enough of itself to require an exercise of that discretion. The nature of the question presented and the soundness of the court's decision are proper considerations.

The District of Columbia Court of Appeals is the highest purely local court of the District. Regulatory laws, such as those governing the practice of optometry, are obviously local in application. Questions may be decisively determined by that court, and need not be settled by this court, when what is involved is interpretation of a local statute, regulation, or ordinance; the interpretation given is within the zone of what is reasonable; the prosecution is for an offense *malum prohibitum* that is brought by the District of Columbia and not by the United States; and the case does not involve overtones of fundamental rights or substantial allegations of executive action as *ultra vires* or overreaching.

In this case, the District of Columbia Court of Appeals undertook a careful review of the applicable statutes, their purpose, the testimony in the trial court, and cases in other jurisdictions. We think its decision is within the zone of the permissible, although we do not consider whether it was required under the act, or best effectuates the legislative intent, or is the conclusion that we would have reached if we had been deciding the matter.

We do not think it requisite that the question be settled by this court. However, we think it in the interest of justice to make it expressly clear that the denial of petition for leave to appeal is without prejudice to the filing of a petition for rehearing with the District of Columbia Court of Appeals, and presentation of amicus curiae memoranda [5] to that court, and our order shall in this case be taken

2. They include the Guild of Prescription Opticians of America, Inc., the Guild of Prescription Opticians of Washington, D. C., Inc., the Contact Lens Society of America, Inc., and the Medical Society of the District of Columbia.

3. See D.C.Code Ann. § 11–321(b) (1967).

4. The rule lists a number of considerations which will guide this court's discretion, including: "(c) Where a question of general importance, or a question of substance relating to the construction or application of statutes or municipal ordinances or regulations, may be involved which has not been, but should be, settled by this court." However, the rule also describes these factors as "neither controlling nor fully measuring the court's discretion."

5. Not until after the petition for reconsideration had here been filed was inter-

position sought by various amici, including memoranda referring to prevailing practice. It may be that they had not sought to submit their memoranda to the District of Columbia Court of Appeals since the parties apparently thought that their only remedy was to seek review in this court.

The memoranda would permit the D.C. Court of Appeals to restudy the issue of legislative intent in the light of further information as to the level of skill required for the fitting of contact lenses, and to give consideration to the contention that presumes a legislative policy, taking into account both expense and limited availability of highest skills, of disclaiming requirement of an ophthalmologist if the task proves to be one requiring lesser technical qualifications.

as holding the case open for the purpose of providing leave therefor.

Petition denied.

## SPOTTSWOOD W. ROBINSON III, Circuit Judge (dissenting):

The eminence of the District of Columbia Court of Appeals in the judiciary is underscored both by the statute conferring our jurisdiction to reexamine its judgments [1] and by our rules indicating the conditions under which we will undertake to exercise it.[2] We conduct such reviews only as a "matter * * * of sound judicial discretion" for "special and important reasons."[3] Our many refusals to grant appeals from the court's decisions attest our recognition of the authority which normally should attach to its pronouncements on matters of purely local law.

Yet there are situations in which a sensitivity to our statutory responsibilities demands that we take a further look at litigation after it has progressed through the Court of Appeals. Included are cases involving "a question of substance not theretofore determined by this court,"[4] or "a question of general importance,"[5] or "a question of substance relating to the construction or application of statutes or municipal ordinances or regulations, * * * which has not been, but should be, settled by this court."[6] Even as to the review of these our action is judgmental, of course, and it cannot be doubted that many falling within the narrowly circumscribed category defined in the court's opinion [7] are unlikely to survive our evaluation in terms of the applicable criteria. Some may, however, although what is involved is the interpretation of a local regulatory law,[8] and I feel that this is one that should. Accordingly, I respectfully dissent from the court's disallowance of this appeal.[9]

In the District of Columbia Court of General Sessions, the petitioner-optician [10] was charged with the practice of optometry because, in the fabrication of contact lenses on an ophthalmologist's [11]

---

1. D.C.Code § 11–321(b) (1967 ed.)

2. Rule 1, Rules Governing Review of Cases from the District of Columbia Court of Appeals, hereinafter cited "Rule 1."

3. Rule 1.

4. Rule 1(c). See also John R. Thompson Co. v. District of Columbia, 92 U.S. App.D.C. 34, 203 F.2d 579, rev'd 346 U.S. 100, 73 S.Ct. 1007, 97 L.Ed. 1480 (1953), on remand, 93 U.S.App.D.C. 373, 214 F. 2d 210 (1954); American Cas. Co. v. Heilman, 90 U.S.App.D.C. 170, 171, 194 F.2d 348 (1952).

5. Rule 1(c). See also Thomason v. Thomason, 107 U.S.App.D.C. 27, 28, 274 F.2d 89, 90 (1959); Chambers v. District of Columbia, 90 U.S.App.D.C. 153, 154, 194 F.2d 336, 337 (1952); District of Columbia v. Little, 85 U.S.App.D.C. 242, 243, 178 F.2d 13, 14, 13 A.L.R.2d 954 (1949), aff'd 339 U.S. 1, 70 S.Ct. 468, 94 L.Ed. 599 (1950). And see Easter v. District of Columbia, 124 U.S.App.D.C. 33, 361 F.2d 50 (en banc 1966).

6. Rule 1(c). See also American Cas. Co. v. Heilman, supra note 4, 90 U.S.App. D.C. at 171, 194 F.2d 348. And see Stone v. District of Columbia, 99 U.S.

App.D.C. 32, 237 F.2d 28 (en banc), cert. denied 352 U.S. 934, 77 S.Ct. 221, 1 L.Ed.2d 160 (1956); Singleton v. District of Columbia, 91 U.S.App.D.C. 91, 198 F.2d 945 (1952).

7. Supra p. 1465.

8. See Stone v. Board of Examiners & Registrars of Architects, 101 U.S.App. D.C. 348, 249 F.2d 104 (1957); Hartman v. Lubar, 77 U.S.App.D.C. 95, 133 F.2d 44 (1942), cert. denied 319 U.S. 767, 63 S.Ct. 1329, 87 L.Ed. 1716 (1943).

9. The case is before us on petitioner's motion for reconsideration of this panel's disallowance, upon the same split in the vote, of his petition for appeal.

10. Petitioner is an optician, with training as a contact lens technician, who has been engaged in practice for more than 20 years, mostly in the District of Columbia. He has been licensed to practice opticianry in New York. The District of Columbia does not require the licensure of opticians. See note 11, infra.

11. "An ophthalmologist is a duly licensed physician who specializes in the care of the eyes. An optometrist examines eyes for refractive error, recognizes (but does not treat) diseases of the eye, and fills

prescription, he made the measurements and performed the fittings incidental to that process.[12] Whether that constituted optometric practice depended upon the meaning properly to be ascribed to legislation enacted in 1924,[13] about two decades prior to the advent of contact lenses. We are told [14] that, as a matter of standard practice over more than a century, persons requiring eyeglasses have been referred by physicians to opticians, who make and fit the glasses and then return the patient to the referring physician for final examination and approval. We are also informed that this general procedure has been in vogue for about 20 years where contact lenses rather than spectacles are the corrective device.[15] Petitioner lays claim to a course of conduct conformable with these long standing customs in this branch of the medical profession.[16]

As the Court of General Sessions read the statute, "an optician may fit contact lenses only when supervised by a physician or an optometrist." In determining "the degree and quality of supervision that is required," it held that "a professional need not be physically present when an optician measures the curvatures of the eyes or fits contact lenses." But, it continued,

> " * * * the actual physical presence of a professional during contact lens adaptation may be dispensed with only if there is a close and continuing relationship between professional and technician and an assurance of professional review as soon as the technical work is completed. * * * [A]n optician who is not operating in the physical proximity of a professional may complete the fitting of contact lenses only after he has previously ascertained or arranged that the patient will be able to see a professional (either an ophthalmologist or an optometrist) as soon as that fitting has been completed." [17]

The Court of Appeals, however construed the statute differently.[18] While not precluding "an optician from grinding, or fabricating contact lenses in accordance with a complete prescription furnished by a doctor, and delivering the lenses to the doctor for fitting," [19] it held "that the actual fitting of contact lenses is the adaptation of lenses within the meaning of our optometry statute" [20]

prescriptions for glasses. The optician is an artisan qualified to grind lenses, fill prescriptions, and fit frames." Williamson v. Lee Optical of Oklahoma, 348 U. S. 483, 486, 75 S.Ct. 461, 463, 99 L.Ed. 563 (1955).

12. The process, detailed in the opinion of the Court of Appeals, Fields v. District of Columbia, 232 A.2d 300 (1967), includes measurement of the corneas, ascertainment of the curvature of the lenses, physical fitting of the lenses, and a determination as to whether they fit properly. A change in the prescribed power of the lenses may become necessary in consequence of a change in curvature to enable a suitable fit.

13. "The practice of optometry is defined to be the application of optical principles through technical methods and devices in the examination of the human eye for the purpose of determining visual defects, and the adaptation of lenses for the aid and relief thereof." D.C.Code § 2-501 (1967 ed.). The unlicensed prac-

tice of optometry is made a misdemeanor by D.C.Code § 2-502 (1967 ed.), under which petitioner was convicted.

14. By the motion of the Medical Society of the District of Columbia for leave to file a memorandum as *amicus curiae* in support of the petition for reconsideration. See note 9, *supra* and note 22, *infra*.

15. This comes from the source cited in note 14, *supra*.

16. See, however, note 17, *infra*.

17. Finding, however, that petitioner "adapted contact lenses on a wholly independent basis, without the requisite professional supervision, guidance, and control," the court held that he had engaged in the practice of optometry.

18. Fields v. District of Columbia, *supra* note 12.

19. *Id.* at 306 n. 21.

20. *Id.* at 305.

whether or not the patient is re-referred to the prescribing professional.[21]

The Court of Appeals' decision affects a wide range of vocational interests which have not been, but which desire to be, heard before the curtain is finally rung down.[22] It has a solid impact on ophthalmologists and opticians alike in the traditional division of functions relative to the fabrication of contact lenses, and possibly eyeglasses as well.[23] Largely because of the doubt it casts upon the legitimacy of other customary relationships, it may affect the medical profession more generally.[24] And I am left in the dark as to whether and in what degree these modifications may involve the visual health of the community.

The question whether and under what conditions the statute prohibits opticians from fitting contact lenses would be one of first impression with us.[25] Its substantiality is manifested not only by the circumstance that the two courts through which the case has journeyed reached significantly different conclusions, but also by the wide divergence in judicial decision in other jurisdictions.[26] Moreover, petitioner has imparted a constitutional dimension to the scope of his grievance by his challenge to the statute's specificity and his related claim that in the circumstances it did not give fair notice of the acts made punishable.[27] I do not say that the decision of the Court of Appeals is wrong, but only that

21. *Id.* at 306.

22. Memoranda as *amici curiae* in support of petitioner's plea for reconsideration, see note 9, *supra*, have been filed by the Medical Society of the District of Columbia, which has a membership of approximately 2,400 doctors of medicine licensed to practice in the District of Columbia, through its Section on Ophthalmology, which represents those specializing in the care and treatment of the eye; the Guild of Prescription Opticians of America, Inc., a nationwide association of practicing opticians; the Guild of Prescription Opticians of Washington, D. C., Inc.; and the Contact Lens Society of America, Inc., representing more than 300 firms engaged in the craft of contact lens fitting on prescription and under direction of licensed medical personnel, a number of which member firms are so engaged in the District of Columbia.

23. See notes 14 and 15, *supra*, and related text.

24. Licensed physicians and surgeons are exempted from the operation of the legislation in question. D.C.Code § 2–520 (a) (1967 ed.). The Healing Arts Practice Act § 43(b), 45 Stat. 1326 (1929), D.C.Code § 2–134(b) (1967 ed.), exempts "laboratory technicians," a category some of the *amici* contend embraces those who customarily have fitted contact lenses on the prescription and at the direction of licensed physicians and surgeons. Additionally, there are cases holding that an optician may fit contact lenses when acting under the direct supervision of legally qualified personnel. *See, e.g.,* Kelley ex rel. Michigan Board of Examiners

in Optometry v. Peterson, 4 Mich.App. 612, 145 N.W.2d 386, 388 (1966); State ex rel. Reed v. Kuzirian, 228 Or. 619, 365 P.2d 1046, 1050, 88 A.L.R.2d 1284 (1961).

25. We have dealt with the optometry statute on only two occasions. Evers v. Buxbaum, 102 U.S.App.D.C. 334, 253 F.2d 356 (1958); Silver v. Lansburgh & Bros., 72 App.D.C. 77, 111 F.2d 518, 128 A. L.R. 582 (1940). Upon neither did we touch the question presented by this case.

26. See the cases collected in Annot., 88 A.L.R.2d 1290 (1963). While there are differences in the statutory provisions these decisions undertake to construe, the conflict of authority is clear. And not without moment is the fact that the Court of General Sessions, and as well the Court of Appeals, Fields v. District of Columbia, *supra* note 12, 232 A.2d at 306, suggested the desirability of congressional consideration of the problem.

27. There appear to be only two criminal cases in this area. In New Jersey State Board of Optometrists v. Reiss, 83 N.J. Super. 47, 198 A.2d 816 (1963), the conviction of an optician was upheld, but there, unlike here, the licensing statute specifically prohibited "fitting contact lenses." 198 A.2d at 820. The court in Commonwealth v. Stemet, 21 Pa.Dist. & Co.2d 295 (1959), had a reasonable doubt whether the measurement of the curvature of the eye in order to grind contact lenses came within the prohibition of the statute, and it found the defendant not guilty of practicing optometry without a license.

we should be surer as to whether it is correct. I would allow this appeal in order that we may fully examine this perplexing problem and, for the benefit of all concerned, endeavor to put it to rest.