The STATE of Oklahoma ex rel. John L. CLIFTON, District Attorney, Appellant,

v.

Leonard REESER d/b/a L. & R. Optical, Appellee.

No. 47347.

Supreme Court of Oklahoma.

Sept. 16, 1975.

Rehearing Denied Jan. 13, 1976.

Kenneth Kienzle, Jr., Kienzle, Jay, Clifton & Shallcross, Shawnee, for appellee.

Larry Derryberry, Atty. Gen., William Don Kiser, and Stephen C. Lewis, Asst. Dist. Attys., Shawnee, for appellant.

DOOLIN, Justice.

Defendant Reeser is an optical dispenser (optician) in Shawnee, Oklahoma. Plaintiff, acting on the information of an optometrist, filed suit in the district court seeking an injunction against Reeser prohibiting him from making examinations of the human eye, duplicating lenses contact or otherwise without a written prescription, fitting, adapting or adjusting contact lenses without a prescription specifically written for contact lenses by an

ophthalmologist or optometrist and from practicing optometry in any manner. Plaintiff also sought an order requiring defendant to dispose of a machine in his office called an Ophthalmometer or Keratometer which is used to fit contact lenses.

Plaintiff alleges defendant has violated the provisions of 59 O.S.1971 § 942[1] and that these acts of violation constitute a public nuisance endangering the health and welfare of the citizens of the State of Oklahoma.

Defendant's office is located in a building also occupied by an ophthalmologist, Dr. W. Defendant would from time to time assist her in refracting patients in her office by taking down prescriptions as she read them off while examining the patient. Although contradicted by witnesses for the plaintiff, defendant testified that he only assisted her, doing what she asked of him and at no time did he make a decision, do the actual refracting or violate the statute in any manner.

Dr. W. would write a prescription for the lenses with the notation "fit for contact lenses," and defendant would then take the patient back to his office where he would use the Keratometer to make the measurements necessary to fit the contacts. After receiving his lens from defendant, the patient was requested to return several times in order that defendant might check them to insure a proper fit.

At the beginning of the trial defendant agreed to comply fully with each phase of the injunction with the exception of disposing of the Keratometer which he felt was necessary in the operation of his trade.

Dr. W., the ophthalmologist, was ill and unable to testify either by deposition or at the trial. No other ophthalmologist testified.

At the close of the trial the court entered an order prohibiting defendant from examining the human eye for ocular abnormalities or from fitting, fabricating or inserting lenses or contact lenses or from duplicating contact lenses without a prescription from an ophthalmologist, oculist or optometrist (hereinafter called examiners). The Court stated that although the evidence was not overwhelming as to a violation of the statutes, it felt that in the interest of public welfare, defendant should be prohibited from examining the eye for ocular abnormalities. The court also specifically did not enjoin the defendant from fabricating, fitting and inserting contact lenses in accordance with the prescription of the examiner where the prescription required the patient to return to the examiner to determine if the prescription had been properly filled and fitted. There was no appeal taken from this portion of the journal entry.

---

1. "It shall be unlawful for any person, firm, corporation, company, or partnership not licensed under the provisions of Chapter 11 or Chapter 13 of Title 59, Oklahoma Statutes 1951, to fit, adjust, adapt, or to in any manner apply lenses, frames, prisms, or any other optical appliances to the face of a person, or to duplicate or attempt to duplicate, or to place or replace into the frames, any lenses or other optical appliances which have been prescribed, fitted, or adjusted for visual correction, or which are intended to aid human vision or to give any treatment or training designed to aid human vision, or to represent or hold himself out to the public as being qualified to do any of the acts listed in this Section, except that persons licensed under the provisions of Chapters 11 or 13 of Title 59, Oklahoma Statutes 1951 may in a written prescription, or its duplicate, authorize any optical supplier to interpret such prescription, and who in accordance therewith may measure, adapt, fit, prepare, dispense, or adjust such lenses, spectacles, eye glasses, prisms, tinted lenses, frames or appurtenances thereto, to the human face for the aid or correction of visual or ocular anomalies of the human eye; and may continue to do the said acts on the aforesaid written prescription, or its duplicate, provided however, that the physician or optometrist writing such prescription shall remain responsible for the full effect of the appliances so furnished by such other person. Provided that this Section shall not prevent a qualified person from making repairs to eye glasses."

The plaintiff's appeal is from the following paragraphs of the order:

"(4) The defendant is not enjoined from duplicating regular lenses as each lense carries its own prescription and the customer is entitled to have duplications made if he so desires.

(5) The defendant is not enjoined from having any equipment for the measurement of the curvature of the eye as these instruments can be used in filling prescriptions. Such instruments would include Ophthalmometers and Kerotometers (sic) but an Optician may not use said instruments to examine the human eye for ocular abnormalities."

The Court of Appeals reversed the trial court as to paragraphs 4 and 5 and held that the defendant was permanently enjoined from duplicating corrective lenses without a complete *written* prescription from a licensed physician or optometrist and from making any tests or measurements of the human eye and from fitting or inserting contact lenses without a prescription written specifically for contact lenses. The Court of Appeals made no order regarding the disposition of the Ophthalmometer or Keratometer. Defendant seeks certiorari.

■ Proposition I of plaintiff's appeal dealt with paragraph 4 of the trial court's order, which if given full force and effect would allow an optician to reproduce a lens for a standard pair of spectacles from a whole or broken lens without the necessity of the customer's providing a written prescription from his examiner. There was no evidence offered at the trial as to the propriety of this practice.

The view that this is a permissible activity of an optician is advocated in *Palmer v. Smith,* 229 N.C. 612, 51 S.E.2d 8 (1948). That Court felt that the duplication of lenses did not constitute the practice of optometry. The record showed that a qualified optician could take a whole or a broken lens and by the use of a lensemeter duplicate the lens with exactness and accuracy. The Court held that as long as the optician confined his work to mere mechanical reproduction where there was no more likelihood of error than in filling an original prescription, and did not measure the power of vision, he was not engaged in the practice of optometry.

The opposite view is set forth in *Louisiana State Board of Optometry Examiners v. Pearle Optical of Alexandria, Inc.,* 177 So.2d 164 (La.App.1965). Pearle contended that lenses, once ground were prescriptions within themselves and once they were prescribed for a person then an optician might legally duplicate the lenses without further prescription because replacement lenses so duplicated would be "upon prescription" as required by statute. (L.R.S. 37:1065). The Court rejected this argument and held that a lens, once ground was not a prescription within itself because there would be no way to tell from the lens whether the person requesting the duplication was the person for whom the glasses were prescribed, or whether the person's eyes had changed or what eye the prescription was written for.

In Oklahoma this question appears to have been set at rest by *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 75 S. Ct. 461, 99 L.Ed. 563 (1955). This was a suit to declare 59 O.S.1971 § 942 unconstitutional. The Court provided the following definitions: "An ophthalmologist is a duly licensed physician who specializes in the care of the eyes. An optometrist examines eyes for refractive error, recognizes (but does not treat) diseases of the eye, and fills prescriptions for eyeglasses. The optician is an artisan qualified to grind lenses, fill prescriptions, and fit frames."

The Court in holding the statute to be constitutional stated that the statute meant, in practical effect, that no optician could supply a lens, whether it was a new lens or a duplicate for a lost or broken lens, without a written prescription. The Court felt that it was for the legislature, not the courts to balance the advantages of this requirement against its disadvantages.

Because of this decision, we affirm the Court of Appeals reversal of this paragraph of trial court's order and hold that 59 O.S.1971 § 942 forbids the duplication of regular or contact lenses without a written prescription from an ophthalmologist, oculist or optometrist.

Proposition II of the plaintiff's appeal challenged the trial court's order dealing with the use of an Ophthalmometer or Keratometer by an optician to measure the curvature of the cornea and the lens in order to fit contact lenses to the individual.

An Ophthalmometer and a Keratometer are the same instrument manufactured by different companies, hereinafter referred to as a Keratometer. A Keratometer may be used to check astigmatism in a patient but its primary use and the only use suggested as permissible to the optician is to measure the curvature of the cornea and the lens in order to fit contact lenses. If the Keratometer readings are not given on the prescription or determined by the optician, there would be no way for the optician to make the contact lenses to fit that particular person.

Testimony by the defendant indicated that most ophthalmologists write a glass prescription and then give the optician permission to change and bring this into a contact lens prescription by writing on the prescription "Fit for contact lenses." There was further testimony that while optometrists who test for vision and also sell glasses would generally have a Keratometer in their office, most ophthalmologists do not sell glasses and do not own a Keratometer and thus do not take this type of readings.

The ophthalmologist renders a medical service and is not concerned with the actual making or selling of the glasses. Most ophthalmologists require their patients to return to them to check the contact lenses in order that they will be assured of a proper fit. 59 O.S.1971, § 942 specifically provides that the physician "shall remain responsible for the full effect of the appliances."

As previously stated, no ophthalmologist testified at the trial level nor did the Court of Appeals have available any arguments or views of an ophthalmologist at the time of its decision. However, in connection with defendant's petition for rehearing in the Court of Appeals and its subsequent petition for certiorari here, the Oklahoma State Medical Association filed an Amicus Curiae Brief in support of the trial court's decision to permit the opticians of the state to own and operate a Keratometer. The Association felt that the matter was of vital importance to the ophthalmologists of the state who are members of the Association and who almost wholly rely on opticians to carry out the filling of prescriptions.

Probably most ophthalmologists do not own a Keratometer and would of necessity be required to purchase one if the Court of Appeals is upheld and opticians forbidden to own or use one "even if vitally important in the preparation of lenses." Neither the Oklahoma Medical Association nor the Ophthalmic Dispensers Society, who also filed a brief in support of defendant, were even aware of the original trial.

The issue of whether 59 O.S.1971 § 492 permits an optician to fit contact lenses has never been decided in Oklahoma. Courts in other jurisdictions have statutes dissimilar to § 942, and have come to opposite conclusions as to whether an optician may measure for contact lenses. The question seems to turn on whether or not the use of the Keratometer is simply a "mechanical function" not requiring the expertise of an optometrist or an ophthalmologist. The cases decided cover more expanded and questionable activities of the optician defendants and the broader issue as to whether or not their activities constitute the practice of optometry as defined by statute.

In *People ex rel. Watson v. House of Vision,* 59 Ill.2d 508, 322 N.E.2d 15 (1974), the Illinois Supreme Court reversed the Appellate Court and held that procedures in fitting contact lenses, including the tak-

ing of Keratometer readings, amounted to "adaptation" of lenses which is described by statute as being included in the practice of optometry and thus unlawful to an optician. Although the prescription said "OK to fit for contacts," this was held not to be adequate to fabricate contact lenses. Certiorari to the Supreme Court of the United States was denied to House of Vision on June 16, 1975, at 422 U.S. 1008, 95 S.Ct. 2631, 45 L.Ed.2d 671.

This view is followed in *State ex rel. Danforth v. Dale Curteman, Inc.*, 480 S. W.2d 848 (Mo.1972) where the Court found that the optician in question was practicing optometry in that he prescribed lenses for visual correction. His acts also included taking measurements of the radius of the cornea which the Court felt was "adapting" of lenses which was not allowed an optician by statute.

These two cases differ from the case at bar in that § 942 specifically allows an optician to "adapt" lenses to the human face if given the authority of a physician or optometrist. Also see *State ex rel. Reed v. Kuzirian*, 228 Or. 619, 365 P.2d 1046, 88 A.L.R.2d 1284 (1961), *Fields v. District of Columbia*, 232 A.2d 300 (D.C.App.1967) and *New Jersey State Board of Optometrists v. Reiss*, 83 N.J.Super. 47, 198 A.2d 816 (1964). These cases although covering a much broader range of activities of the optician generally hold that the fitting of contact lenses is not merely a "mechanical process."

An opposite result is reached in *High v. Ridgeway's Opticians*, 258 N.C. 626, 129 S.E.2d 301 (1963) where the Court answered the same question as presented in our case; whether or not the use of a Keratometer by an optician to fit contact lenses is prohibited by statute. Although in North Carolina opticians are licensed and in Oklahoma they are not, the enumeration of permissive activities in the North Carolina statutes is very similar to those allowed Oklahoma opticians by § 942. The North Carolina licensing statute does not refer

directly to the fitting of contact lenses and was not given any significance in the Court's opinion. The Court held that as long as the optician confines his work to the mechanical processes and does not in any way attempt to measure the power of vision, he is not practicing optometry, but the patient should be required to return to the examiner in order that the writer of the prescription may determine whether the prescription has been properly filled and the contact lenses properly fitted. See *State Board of Optometry v. Chester*, 251 Miss. 250, 169 So.2d 468 (1964) which expresses the same view.

In a recent Kansas case, *State ex rel. Londerholm v. Doolin*, 209 Kan. 244, 497 P.2d 138 (1972), the State Board of Examiners in Optometry sought an injunction to prohibit defendant from fitting contact lenses. As in our state, defendants were unlicensed dispensing opticians. The Kansas Medical Society was allowed to intervene on behalf of the defendants, and an ophthalmologist testified in their behalf. The ophthalmologist testified that in his opinion the use of the Keratometer to obtain the curvature of the cornea did not require a professional medical or optometric judgment and did not constitute an examination of the eye for ocular abnormalities.

The Court felt that the use of a Keratometer, which measures the front center area of the cornea and is accomplished by light reflection, involves only a technical measurement. The Court found that the acts of defendants in the fitting process did not result in correcting refractive errors or in examining the eyes for pathological conditions. "As long as defendants as dispensing opticians, fabricate, fit and insert contact lenses in the eyes in accordance with the prescription of a physician, and require the patient to return to the examining physician in order that the physician may determine whether or not the prescription has been properly filled and the contact lenses properly measured, fabricated and fitted, the defendants are not

engaged in the practice of optometry within the meaning of the statutes of this state."

Plaintiff cites two Oklahoma Attorney General's opinions 69–172(A) issued June 3, 1969 and 69–305 issued May 18, 1970. The question proposed in the first opinion was "Does any state statute prohibit opticians from measuring and fitting contact lenses, or fitting contact lenses pursuant to prescription of a physician?" The Attorney General answered the first part in the affirmative and the second in the negative, allowing an optician to fit contact lenses if the prescription from the physician or optometrist is a full, complete and specific prescription for contact lenses. The second opinion clarified the prior opinion and added that the prescription required by the statute must contain results of all measurements of the eye. This interpretation would appear to prohibit an optician from using the Keratometer.

The final construction of a statute rests with the courts and an opinion of the Attorney General is not controlling, although it is given great respect. See *Wenke v. Hitchcock,* 6 Cal.3d 746, 100 Cal.Rptr. 290, 493 P.2d 1154 (1972), *Pan American Petroleum Corporation v. Board of Tax-Roll Corrections of Tulsa County,* 510 P.2d 680 (Okl.1973), *Jones v. Williams,* 121 Tex. 94, 45 S.W.2d 130, 79 A.L. R. 983 (1931). We feel that the view expressed by the Kansas case is the better view.

The optician does not decide whether or not a patient may wear contact lenses. This is indicated on the prescription. The optician does not use the Keratometer to measure refraction or astigmatism. The patient is advised to return to the examiner for assurance as to proper fit. If all ophthalmologists would be required to purchase a Keratometer and take the extra time to use it in making measurements for the fitting of contacts, this might result in a disservice to the patient in added expense. The Oklahoma statute is much broader than most statutes involved in the cases cited, in that it does permit the optician to "measure, adapt, fit, prepare, dispense, or adjust" the lenses to the human face. We hold that this permits an optician to use the Keratometer to aid in the fitting of contact lens. The trial court enjoined the defendant from examining the eye for ocular abnormalities and from fitting lenses without a written prescription. We have here held that the optician may not duplicate lenses of any type without a written prescription. The public is well protected by these rulings.

Court of Appeals affirmed in part and reversed in part and trial court's order in paragraph (5) ordered reinstated.

All the Justices concur.