**In re Robert Eric PEIFFER, Debtor.**

**Robert Eric PEIFFER, Plaintiff,**

v.

**ALABAMA DEPARTMENT OF REVENUE, Defendant.**

Bankruptcy No. BK 90–72014.
Adv. No. 90–70182.

United States Bankruptcy Court,
N.D. Alabama, W.D.

April 22, 1991.

E. Calhoun Wilson, Tuscaloosa, Ala., for debtor/plaintiff.

Mark D. Griffin, Duncan Crow, Montgomery, Ala., for Alabama Dept. of Revenue.

C. Michael Stilson, Tuscaloosa, Ala., Chapter 13 Trustee.

## MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Chief Judge.

This matter came before the court on Robert Eric Peiffer's Motion (complaint)

for Discharge of Taxes. The debtor took the position that 1981–82 taxes owed to the State of Alabama were excise taxes of the type contemplated in 11 U.S.C. § 507(a)(7)(E) and could be discharged after three years. The defendant, Alabama Department of Revenue, contended that the state sales tax obligation is a nondischargeable "trust fund" tax under 11 U.S.C. § 507(a)(7)(C). The court has reviewed the record of the Peiffer case in the context of the applicable law and finds that the sales taxes at issue are NONDISCHARGEABLE.

## FINDINGS OF FACT

On May 31, 1985, the Bankruptcy Court in Birmingham, Ala., granted debtor Robert Eric Peiffer a discharge of personal liability "from all dischargeable debts" in a Chapter 7 liquidation case filed April 29, 1982. Peiffer filed his Chapter 7 proceeding as "Robert Eric Peiffer fdba Sav–U–Warehouse Foods, Wilson Bradley Used Car Sales, B & P Farms, Peiffer Enterprises and Peiffer Hog Farm."

The debtor's Schedule A in that proceeding listed the Alabama Department of Revenue "Sales tax" at $10 and the City of Winfield for $10 (although it did not specify what type of tax was owed the City of Winfield). The records in this case do not reveal a proof of claim filed by the Alabama Department of Revenue.

On October 5, 1988, Robert Eric Peiffer filed a Chapter 13 petition to allow reorganization of personal finances. The debtor's Chapter 13 plan was confirmed January 12, 1989, with unsecured creditors to be paid one percent. That case was dismissed September 7, 1990.

On September 11, 1990, Mr. Peiffer filed the Chapter 13 case in which this adversary proceeding arose. The debtor listed the Alabama Department of Revenue as an unsecured creditor for $39,000 in 1981–82 "sales tax and penalties." The debtor's pleading commencing the adversary proceeding was filed September 12, 1990. The pleading contended "That taxes owed to the Alabama Department of Revenue are for the years 1981 and 1982, and that under Section 507(a)(7)(A)(i), 'the debts should be discharged'" and "Debtor would show the tax returns in question were filed timely and that there were no other factors involved which would prevent a discharge of the debts."

The State of Alabama filed its Response to Motion for Discharge of Taxes November 7, 1990. It stated that the debtor owed sales taxes to the State of Alabama; Marion County and the City of Winfield for October 1, 1981 through January 31, 1982. The state contended that such taxes fall under 11 U.S.C. § 507(a)(7)(C) as "A tax required to be collected or withheld and for which the debtor is liable in whatever capacity." Such taxes, the state contended, were excepted from discharge by 11 U.S.C. § 523(a)(1)(A). Additionally, the state alleged that Mr. Peiffer filed no state income tax return for the tax year 1982, contending that obligation was also nondischargeable under the provisions of Section 523(a)(1).

Mr. Peiffer's Chapter 13 plan was confirmed on November 1, 1990 with his payments to the Trustee's Office set at $290.00 per month. In addition to payments on his attorney's fees, the plan provided for a $15.00–per–month fixed payment to Standard Furniture Co. on secured debt and that the Internal Revenue Service would be allowed in a special class of creditors and paid 100 percent for federal income taxes for 1982. The plan would distribute one percent of the amounts owed prorata to unsecured debtors.

The bar date for claims against Mr. Peiffer was set at January 17, 1991. On December 4, 1990, the Alabama Department of Revenue filed the following claims on behalf of state and local governments which shared sales tax for transactions at Winfield, Alabama. Claims include: Claim No. 5, Marion County sales tax for November of 1981 through the end of January, 1982, $6,471.83 ($2,095.57 in interest computed through September 11, 1990, the petition date); Claim No. 6, State of Alabama sales tax for October of 1981, $3,071.84 (including $2,355.71 in interest); Claim No. 7, State of Alabama sales tax for Novem-

ber of 1981 through the end of January, 1983, $21,157.69 ($7,825.05 in interest); and Claim No. 8, Winfield City sales tax for November of 1981 through the end of January, 1982, $12,906.53 including $4,188.20 in interest.

None of the proofs of claim filed by the state seek any penalty for the delinquent sales tax they seek. The total amounts claimed compute taxes assessed and interest, then deduct some credits for the taxpayer to arrive at the balances claimed in Claims Nos. 5, 6, 7 and 8. The Alabama Department of Revenue at this writing had filed no claim for 1982 state income tax it mentioned in its initial pleading in this adversary proceeding.

On January 15, 1991, counsel for the debtor filed a memorandum brief. Then on January 31, 1991, the state also filed a brief. On February 14, 1991, the adversary proceeding was set for trial. Counsel for Mr. Peiffer told the court that the debtor had been in the grocery business in 1981 and 1982. At that time, the debtor owed the state of Alabama, he said, but did not know it. He said that shortly after the business closed, Mr. Peiffer mailed the state a check of $4,000.00 to $5,000.00 on a bank account containing $8,000.00 to $9,000.00. However, the bank froze the account and the check was never paid.

The court allowed counsel for both sides 15 days to file supplemental briefs in the case after receipt from Birmingham of records in the old Chapter 7 case. The case went under submission March 4, 1991 on the pleadings in the adversary proceeding and the record.

## CONCLUSIONS OF LAW

This case hinges on the question of whether Alabama's sales tax, collected for both state and local governments by the state, is a "trust fund" tax as contemplated in 11 U.S.C. § 507(a)(7)(C) [1] or an excise tax under 11 U.S.C. § 507(a)(7)(E) [2]. A trust fund tax is always given a priority and is never subject to discharge in bankruptcy. *See* 11 U.S.C. §§ 507(a)(7)(C) and 523(a)(1)(A) [3]. An excise tax, however, is given a priority and may be discharged if the transaction underlying the tax took place more than three years prior to the debtor's bankruptcy filing. *See* 11 U.S.C. § 507(a)(7)(E) and 523(a)(1)(A). (The Alabama Department of Revenue had not filed a claim for the 1982 income tax nor offered any proof of its allegation that Mr. Peiffer failed to submit a return for that year.)

If the taxes in dispute here were deemed to be excise taxes, they would be "stale" excise taxes and could be discharged in this bankruptcy. However, State of Alabama

---

1. 11 U.S.C. § 507(a)(7)(C) provides:
   (a) The following expenses and claims have priority in the following order:
   (7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
   (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;
   Case law ruling on Section 507 of the Bankruptcy Code prior to the effective date of the Bankruptcy Amendment Act of 1984 will refer to Section 507(a)(7) as Section 507(a)(6). Subsections (a)(5) and (a)(6) were redesignated as subsections (a)(6) and (a)(7) respectively by § 350 of the Bankruptcy Amendment Act of 1983. *See* Norton Bankr.L. & Prac., Bankruptcy Code, at 372 (1990–91 ed.).

2. 11 U.S.C. § 507(a)(7)(E) provides:
   (a) The following expenses and claims have priority in the following order:
   (7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—
   (E) an excise tax on—

   (i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due under applicable law or under any extension, after three years before the date of the filing of the petition; or
   (ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;

3. 11 U.S.C. § 523(a)(1)(A) provides:
   (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [11 U.S.C. §§ 724, 1141, 1228(a), 1228(b) or 1328(b)] does not discharge an individual debtor from any debt—
   (1) for a tax or a customs duty—
   (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title [11 U.S.C. § 507(a)(2) or (a)(7)], *whether or not a claim for such tax was filed or allowed;* (emphasis added)

sales taxes are clearly "trust fund" taxes based on state law definition of their structure, and upon precedent of the United States Court of Appeals for the Eleventh Circuit in a Georgia bankruptcy case. Consequently, this debtor's sales tax obligation may not be discharged.

## I.

### ALABAMA SALES TAXES ARE LEVIED DIRECTLY ON CONSUMERS, WITH MERCHANTS REQUIRED TO COLLECT AND REMIT THE TAXES

■ *Ala.Code § 40–23–26* sets up the sales tax levy and collection structure that is the backbone of state and local revenue in Alabama. It provides that all entities doing business in the state "shall add to the sales price and collect from the purchaser on all sales" the tax due.

More specifically, Section 40–23–26(c) provides: "All taxes paid in pursuance to this division or any other statute enacted in this connection shall *conclusively be presumed to be a direct tax on the retail consumer, precollected for the purpose of convenience and facility only.*" (emphasis added) Given the unambiguous wording of the statute, Alabama state case law has also viewed the sales tax as a direct levy on buyers, rather than on the merchants/sellers/retailers who are charged with collection and remission to the state.

While the tax law views the role of taxpayer buyer and tax collector-merchant as interlocked, it puts the responsibility for gathering the money due and seeing that it gets to the state on the merchant. As noted in *Calhoun Publishing Co., Inc. v. State*, 513 So.2d 643 (Ala.Civ.App.1987): "In Alabama, although retail sales tax is levied against the ultimate consumer, the burden is on the seller to collect from the purchaser the amount of tax due on a sale, and the State looks to the seller for the tax. *Merriwether v. State*, 252 Ala. 590, 42 So.2d 465 (1949)."

In this case, the record does not indicate that the debtor has challenged the totals in sales tax and interest under *Ala.Code § 40–23–26(c)* claimed by the Alabama Department of Revenue for the State of Alabama, for Marion County and for the City of Winfield, much less contended that such were not owed. In fact, Mr. Peiffer's own schedule of debts listed $39,000 in sales tax and penalties owed to the state for 1981 and 1982.

## II.

### THE ELEVENTH CIRCUIT CONSIDERS SUCH SALES TAXES TO BE NON-DISCHARGEABLE "TRUST FUND" TAXES

The United States Court of Appeals for the Eleventh Circuit last considered the issue of where a state sales tax fits in 11 U.S.C. § 507(a) in *Matter of Waite*, 698 F.2d 1177 (11th Cir.1983). The court determined that a Chapter 7 debtor in the Southern District of Georgia in 1981 could not discharge his obligation to a bonding company which had paid his 1976–77 liquor sales tax obligation to the State of Tennessee.

The Eleventh Circuit refused to allow discharge of the debt to the surety because it found that the bonding firm was subrogated to *all* of the rights of the State of Tennessee against the debtor—including the State of Tennessee's right to prevent discharge of the tax debt under the Bankruptcy Code.

In *Waite*, the appeals court found that 11 U.S.C. § 523(a)(1)(A) was clearly applicable to create an exception to discharge for the sales tax under what is now 11 U.S.C. § 507(a)(7)(C) (in 1983, 507(a)(*6*)(C)). As with some of the cases in this narrow area of law, it applies the term "excise tax" to a sales tax, while nevertheless determining a *direct* sales tax to be a "trust fund" tax as covered by 11 U.S.C. § 507(a)(7)(C).

Under that subsection (11 U.S.C. § 523(a)(1)(A)), a tax "of the kind specified in section ... 507(a)(6) (now 507(a)(7))" *is not dischargeable.* Section 507(a)(6) (now 507(a)(7)), concerning priority of claims, lists a number of taxes including a "*tax required to be collected*

*or withheld and for which the debtor is liable in whatever capacity."* *Id.* § 507(a)(6)(C) (now 507(a)(7)(C)). The legislative history reveals that this category of taxes "includes *excise taxes which a seller of goods is required to collect from a buyer and pay over to a taxing authority."* S.Rep.No. 989, 95th Cong., 2d Sess. 71, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5857. (emphasis added)

*Waite* at 1178–79.

It makes no difference that *Waite* is a Chapter 7 case, while Mr. Peiffer's case is under Chapter 13. The same rule applies to discharge under 11 U.S.C. § 1328[4]. Section 507(a)(7)(C) trust fund taxes are non-dischargeable in both Chapter 7 and Chapter 13.

In general, other circuit courts of appeal which have ruled on or discussed the narrow issue of whether a sales tax debt is dischargeable in bankruptcy as an excise tax or non-dischargeable as a "trust fund" tax, are in accord with the Eleventh Circuit's view.

As in the *Waite* case, other courts have differentiated based on the way state law sets up the obligation—finding that sales taxes levied directly on the consumer are "trust fund taxes" as contemplated in Section 507(a)(7)(C); or, if they are levied directly on the seller, they are "excise taxes" as in Section 507(a)(7)(E) and may be discharged in bankruptcy when more than three years old.[5]

"Decisions interpreting the present Bankruptcy Code provisions clearly indicate sales taxes (also known as trust fund taxes) are not dischargeable in bankruptcy," noted the United States District Court for the Northern District of Alabama in *In re Rikard,* 127 B.R. 59 (N.D.Ala.1989).

District Judge E.B. Haltom Jr.'s *Rikard* order reversed a Bankruptcy Court decision which held that a sales tax obligation had been discharged via a debtor's Chapter 7 discharge. The Alabama Department of Revenue, a listed creditor in the Chapter 7 case, levied the debtor's bank account following discharge. Then the Rikards had reopened the Chapter 7 case to seek a determination that the uncollected sales tax debt was discharged.

The District Court dismissed the debtor's argument that sales taxes were dischargeable based on *Matter of Fox,* 609 F.2d 178 (5th Cir.1980), a case ruling on former Section 17(a)(1)(e). The District Court noted the difference in the language of Section 17(a)(1)(e)[6] and the existing Section 507(a)(7)(C):

The difference in the "has collected" wording of § 17(a)(1)(e) and the "required to be collected" language of § 507(a)(7)(C) is dispositive of this case. Decisions interpreting the present Bankruptcy Code clearly indicate sales taxes (also known as trust fund taxes) are not dischargeable in bankruptcy *In re*

---

**4.** 11 U.S.C. § 1328(c)(2) provides:

A discharge granted under subsection (b) of this section discharges the debtor from all unsecured debts provided for by the plan or disallowed under section 502 of this title, except any debt—
(2) of a kind specified in section 523(a) of this title.
Section 523(a) excepts from discharge the "trust fund" taxes of Section 507(a)(7)(C).

**5.** *Matter of Fields,* 926 F.2d 501 (5th Cir.1991); *In re Burns,* 887 F.2d 1541 (11th Cir.1989); *In re Groetken,* 843 F.2d 1007 (7th Cir.1988); *In re Shank,* 792 F.2d 829 (9th Cir.1986); *DeChiaro v. New York State Tax Com'n,* 760 F.2d 432 (2d Cir.1985); *Rosenow v. State of Illinois Dept. of Revenue,* 715 F.2d 277 (7th Cir.1983).

**6.** The pertinent part of old Section 17(a)(1), 11 U.S.C. § 35(a)(1)(e) (repealed 1978) provided in pertinent part:

A discharge in bankruptcy shall release a bankrupt from all his provable debts, whether allowable in full or in part, except such as (1) are taxes which became legally due and owing by the bankrupt to the United States or to any state or any subdivision thereof within three years preceding bankruptcy: Provided, however, that a discharge in bankruptcy shall not release a bankrupt from any taxes ... (d) with respect to which the bankrupt made a false or fraudulent return, or willfully attempted in any manner to evade or defeat, or (e) *which the bankrupt has collected or withheld from others as required by the laws of the United States or any State or political subdivision thereof, but has not paid over.* (emphasis added)

*Shank,* 792 F.2d 829 (9th Cir.1986). As stated in *DeChiaro v. New York State Tax Com'n,* 760 F.2d 432, 433 (2nd Cir. 1985):

> The Code provisions in question are section 507(a)(6)(C) (now 507(a)(7)(C)), which covers a tax "required to be collected," commonly referred to as a "trust fund" tax, and section 507(a)(6)(E), which covers an "excise" tax. *A trust fund tax is always given a priority and is never subject to discharge in bankruptcy, see* 11 U.S.C. §§ 507(a)(6)(C), 523(a)(1)(A). (emphasis added).

*Rikard* at 61–62.

Based on the reasoning of the Eleventh Circuit as expressed in *Matter of Waite,* sales taxes as contemplated by *Ala.Code § 40-23-26(c)* are nondischargeable in bankruptcy as "trust fund" taxes under Sections 507(a)(7)(C) and 523(a)(1)(A).

### III.

### THE INTEREST ON A NONDISCHARGEABLE TAX OBLIGATION IS ALSO NONDISCHARGEABLE, THE ELEVENTH CIRCUIT HAS HELD

The Alabama Department of Revenue apparently is not seeking to collect penalties from Mr. Peiffer. However, the claims filed do contain interest: $2,095.57 of the $6,471.83 Claim No. 5 for Marion County; $2,355.71 on the $3,071.84 Claim No. 6 of the State of Alabama; $7,825.05 in interest in the $21,157.69 Claim No. 7 of the State of Alabama; and $4,188.20 on Claim No. 8 for $12,906.53 for the City of Winfield.

The Court of Appeals for the Eleventh Circuit in *In Re Burns,* 887 F.2d 1541 (11th Cir.1989) held that interest accruing on nondischargeable tax liabilities after a prior bankruptcy filing was also nondischargeable. In making its holding, the Eleventh Circuit found that the rule of *Bruning v. United States,* 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964) survived enactment of the Bankruptcy Code of 1978. The court joined the Eighth Circuit which had adopted that position in *In re Hanna,* 872 F.2d 829 (8th Cir.1989).

Consequently, the interest due on Mr. Peiffer's nondischargeable sales tax obligations to state and local government is also nondischargeable.

### CONCLUSION

Alabama sales tax obligations to state and local government are levied directly on the purchaser, with the seller collecting taxes and remitting the revenues to the state. Such taxes are "trust fund" taxes under 11 U.S.C. §§ 507(a)(7)(C) and 523(a)(1)(A) and nondischargeable in bankruptcy. Additionally, the interest accruing on nondischargeable taxes is also nondischargeable, despite the filing of subsequent bankruptcies.

Therefore, Debtor Robert Eric Peiffer's obligations for certain 1981–82 sales taxes and interest, as represented by Claims No. 5, 6, 7 and 8 are nondischargeable, and the Debtor's complaint must be denied.

This memorandum shall constitute findings of fact and conclusions of law pursuant to Bankr.R. 7052. A separate order shall be entered consistent with this opinion.

DONE AND ORDERED.